## Smith vs. Powers.

Where a party moves to amend his pleadings, and the court grant the motion upon terms that he pay the cost, he may elect whether he will accept the leave, with the burden of the condition.

A defendant is not entitled to judgment *non obstante veredicto*. If the plaintiff has a verdict, but is not entitled to judgment upon it, the regular course is to arrest the judgment.

A deed conveying to the grantor fifty acres of land, being the half of a certain hundred acre lot described as bounding upon a river, " said half to be taken off the width of said lot on said river" (which was at the south end,) " and so far back as to make the half of said lot, quantity and quality, as it now stands," does not convey any interest in the north end of the lot so as to constitute the grantor and grantee tenants in common of the whole lot.

If, however, such deed were construed as constituting a tenancy in common, the fact that the north and south portion of the lot had been long possessed in severalty, each party claiming a dividing line between them, with an agreed boundary on the west line of the lot, would be conclusive evidence of partition, notwithstanding the monuments to which they claimed on the east side were different.

The court may inquire of the jury upon what grounds they found their verdict, and the answer may be considered upon a motion for a new trial.

The declaration of a party in possession of land, and claiming title, respecting the boundary of his lot, is admissible in evidence, not only against him, but against them who hold under him.

But his declaration tending to extend the limits of his possession could not be proved by him in his own favor, and cannot be admitted in favor of those who succeed him. His subsequent decease will not make the declaration admissible.

But the declarations of a person, since deceased, who had means of knowledge, and no interest in making the declaration, are competent evidence upon a question of boundary, even in a case of mere private rights.

Evidence that the party's agent conversed relating to the case in the hearing of some of the jurors, is not sufficient to authorize the court to set aside the verdict, if, from the uncontradicted affidavits of all the jurors, it appears that they heard no remarks, or none which could have a bearing upon the merits of the case.

Trespass, for that the defendant, on the first of November, 1834, and on divers other days prior to the date of the writ, broke and entered the plaintiff's close in Bath, being all that part of lot numbered three, in the first range of lots on the westerly side of Amonoosuc river, that lies southerly of a line extending across said lot from a pine root, &c., on the westerly line of the lot, to a pine root, &c., on the easterly line of said lot, and then and there cut and carried away divers trees, &c.

The defendant pleaded, first, as to the force and arms, &c., and to all the trespass except breaking and entering the close, by him afterwards described, and cutting and carrying away certain trees, that he was not guilty. Second, as to breaking and entering a certain close, which he described in his plea, and which was bounded northerly by the line between the two pine roots mentioned in the plaintiff's declaration, and extended southerly so as to include a portion of the land described and included in the plaintiff's declaration, and cutting certain trees thereon, the defendant pleaded *actio non*, because the said close was his soil and freehold, wherefore he broke and entered the same, and cut and carried away the trees, as lawfully he might do, &c.

The plaintiff to this plea replied, that the close described was not at the times, &c., the soil and freehold of the defendant, and tendered an issue to the country. The plaintiff then new assigned the trespasses attempted to be justified in the plea, and the defendant demurred specially to the new assignment, because the plaintiff had new assigned the trespass within the same close as that described in the declaration, after the whole original declaration had been answered, &c. Upon this demurrer the action was transferred to this court, and the court decided that the demurrer was well taken. The plaintiff then moved the court for leave to withdraw the new assignment, which was granted, on the terms that the plaintiff pay the costs of the demurrer, and the action was transferred to the court of common pleas for trial.

In the common pleas the defendant objected that the plaintiff ought not to be permitted to proceed with the case to the jury until those costs were paid, but the plaintiff's counsel declining to withdraw the new assignment on those terms, and no farther order having been made respecting the motion in this court, than to grant leave to withdraw on those terms; the court of common pleas ruled that if the plaintiff did not think proper to pursue the motion and withdraw the assignment upon the terms ordered, the court could not compel him so to do; and if the assignment was not withdrawn, that the court could not enforce any order for terms on the leave to withdraw it. The defendant also moved for a nonsuit on the same ground, but the court overruled the motion.

After the trial of the issues by the jury and a verdict for the plaintiff, the defendant moved for judgment *non obstante veredicto*, which the court overruled upon the ground that the defendant, on the whole record, was only entitled to judgment upon the demurrer to the new assignment. To all which the defendant excepted.

The case having proceeded to a trial of the issues of fact, the plaintiff introduced evidence to show a title in himself to that part of the lot described in the second plea of the defendant, being the *locus in quo*, as shown upon the following plan, and to show the cutting and carrying away of trees therefrom by the defendant. In support of a title in himself, he introduced a deed from Gideon Ferris to himself, dated Dec. 11, 1840, conveying one half of the hundred acre lot in Bath, number three in the first range of hundred acre lots on the west side of Amonoosuc river, to be taken from the river end of said lot, and to extend across the whole width of the same, being the same land that Maxey Hazelton, administrator of Robert Hazelton's estate, conveyed to said Ferris, April 9th, 1799, reference thereto being had.

He also introduced evidence that Ferris was in possession of the southerly end of the lot number three, bounding on the river, and that, after he purchased of Ferris, he entered and had continued in possession.

The plaintiff also introduced a copy of a deed, Maxey Hazelton, administrator of Robert Hazelton, to Gideon Ferris, dated

April 9, 1799, conveying " fifty acres of land, being part of said deceased's real estate, situated in Bath, and being one half for quantity and quality of the hundred acre lot number three in the first range, west side of Amonoosuc river, said fifty acres to be taken off from the river end of said lot, and to extend across the whole of said lot, which same lot is sometimes called the Rowell lot." Also, a copy of a deed, Samuel Gilman to Robert Hazelton, March 10, 1784, conveying " fifty acres of land in Bath, being the half of the hundred acre lot number three, on the west side of Amonoosuc river, known by the name of the Rowell lot, and is the half of said lot next the river, which land I now live on." Also, a copy of a deed, Timothy Bedel to Samuel Gilman, April 11, 1774, conveying " fifty acres of land in Bath; said land is the half of the third lot of land in Bath, on the west side of Amonoosuc river, from the upper end of the town, and is known by the name of the Rowell lot, and said half is to be taken off the width of said lot on said river, and so far back as to make the half of said lot, quantity and quality, as it now stands."

It was admitted on both sides that the pine root first mentioned in the plaintiff's declaration was a boundary on the west line of the lot, between the plaintiff and defendant.

The plaintiff introduced evidence tending to show that the other pine root mentioned in the declaration, on the easterly line of the lot, was the corner between the parties on that line, and that there was a marked line between those two corners, made somewhere from forty-three to forty-eight years ago, and he contended that the lot had been divided by this line.

There was evidence that the defendant had cut trees southerly of this line, and had drawn them off over the south part of the lot; and he introduced evidence tending to show a corner on the easterly line of the lot farther south than that claimed by the plaintiff, and some evidence of marked trees between that corner and the pine root on the westerly line of the lot.

Each of these lines made an unequal division of the lot.

The defendant showed no deed to himself, but there was evidence introduced by both parties that he was in possession of the northerly part of the lot number three, claiming title.

The plaintiff put into the case a mortgage from Jacob Rowell to S. & J. Hutchins, dated Dec. 12, 1808, conveying "a parcel of land in Bath, being a half hundred acre lot of land, being lot number three, first range of hundred acre lots west division, bounded as follows:   The north-west corner, a white pine stake and stones ; then south nine degrees east to a birch stake in a large pine root marked J. R. ; thence through the centre of the lot to a large white pine ; thence to a hemlock marked J. R., N. E., then to the first bound," saving and reserving one and one quarter acre, which the grantor deeded to Isaiah Chase.

There was no evidence of a conveyance from the mortgagees, but a witness stated that they sold the land to David Weeks, and the defendant contended that it was to be presumed that he was in under the title of S. & J. Hutchins.

A house had been built on the north-west corner of the lot many years ago, and the defendant introduced a deed from Jacob Rowell to Isaiah Chase, dated October 4th, 1804, conveying an acre and a half of land on the north-west corner of lot number three ; also, a deed from Isaiah Chase to David Weeks, dated October 17, 1812, conveying, among other lands, the same tract.

The plaintiff introduced evidence that after Rowell left the north part of the lot, David Weeks was in possession of it, and that he at one time claimed title to the line now claimed by the defendant ; that he sold to his son, John C. Weeks, who entered and sold to the defendant ; and that the defendant, after he was in possession, claimed title to that line, and had made a fence part way on or near it.   No deeds were shown, but the evidence went in without exception.

The defendant contended that the deed, Bedel to Gilman, constituted a tenancy in common of the whole lot ; that the other deeds followed, in this respect, essentially the phraseology of that ; that there was no evidence of any partition afterwards, and that the tenancy in common therefore existed at the time of the commencement of this suit ; and on this ground he moved for a non-suit, but the court overruled the motion.

The defendant farther contended that if no tenancy in common existed, the effect of the words "quantity and quality," in the

deed Bedel to Gilman, was such that if the jury should be of opinion that there had been no dividing line, the lot must now be divided according to quantity and quality, as it existed when the conveyance from Bedel to Gilman was made, and that if the jury should be of opinion that there had been a dividing line agreed upon, the circumstance that the deed of Bedel contained that clause, in connection with the evidence relative to the situation of the lot, ought to be considered as tending to show that the line was where the defendant claimed it to be, and as tending to show that line to be the true line.

The defendant farther contended that the words in the deed from Ferris to the plaintiff, " to be taken off," &c., furnished evidence that there had been no dividing line agreed upon up to that time.

There was evidence that Jacob Rowell lived on the northerly part of the lot several years, "forty or fifty years since," claiming title. No deed to him was shown. The plaintiff introduced evidence that Rowell, while he lived there, pointed out the boundary on the east, to which the plaintiff claims, as the corner between him and the plaintiff, and spoke of the bound as being in that place. Rowell has since died. The defendant offered evidence of the declarations of Rowell, made while he was in possession, that the bound to which he claimed on the east line of the lot was the corner to which the defendant now claims; but it appeared that those declarations were not made at the same times as the conversations given in evidence by the plaintiff, that they did not accompany any act, and that the plaintiff was not present. The court rejected the evidence, and the defendant excepted.

There was a controversy between the parties respecting the true situation of the northerly and westerly lines of the lot. The plaintiff introduced evidence that John Rowell, the father of Jacob, lived on the lot with his son. It did not appear what title he had, or that he had ever parted with it, if he had any, except that he moved away thirty or forty years ago, and had not lived on the lot since. The plaintiff offered evidence of the declarations of said John, who has since deceased, made after he had moved from the lot, that a certain birch tree, standing near the river,

was the south-west corner of the lot. To this evidence the defendant objected, but it was admitted.

The court instructed the jury that there were two issues for trial: the first, whether the plaintiff had shown a title to the land south of the line mentioned in the second plea of the defendant, and if so, whether he had shown that the defendant had committed any trespass on that. The second, whether the defendant had title to the land mentioned in the second plea. That the plaintiff, having shown Ferris to have been in possession of the south part of the lot, and a deed from Ferris to himself of the south half of the lot in 1800, and that he entered under that deed, had made out a sufficient title to all the land south of the line claimed by the defendant; that there was no evidence to rebut this, and the only question as to the first issue was, therefore, whether the defendant had committed any trespass on that part. That the defendant, by his second plea, admitted an entry upon the tract there described, being part of the land included in the plaintiff's declaration, and a cutting of trees there, as alleged by the plaintiff, but by the plea set up title to that in himself. That he had shown no deed covering it, but had shown that he entered upon it. That there was in the case a mortgage, Jacob Rowell to S. & J. Hutchins, of the north part of the lot, giving a line on the south, from the pine root on the west line to some boundary on the east, and there was evidence that the mortgagees sold the land to David Weeks, and that Weeks (and afterwards the defendant,) had been in possession of the north part. That the defendant traced no title to himself by any deed, but contended on this that he must be presumed to be in possession of the north part, under the title of the mortgagees; that the court had been somewhat embarrassed by the course that had been taken in the trial, the plaintiff having gone forward to show title in himself to the disputed tract, instead of having put the defendant to offer proof, in the first place, to maintain the second plea, but they might take the case as if the defendant showed possession under some color of title, and had given *primâ facie* evidence to sustain the plea. That the deed from Ferris to the plaintiff, standing alone, would give the plaintiff one half the lot, by measure, off of the south end;

and to ascertain the plaintiff's land, if there was nothing else, it would be necessary to ascertain the boundaries of the whole lot, and then the plaintiff would be entitled to half the quantity taken from the south end. That if the defendant was supposed to be in possession under color of Hutchins' title, the plaintiff's deed was the elder, and would prevail, to the extent of the land described in it, against the Hutchinses; and the plaintiff, therefore, taking these two deeds, without other evidence, would show a title to part of the disputed tract, even supposing the south line in the mortgage to Hutchins to be the line contended for by the defendant, as the lines of both parties appeared to make an unequal division of the lot, on all the evidence in the case.

The court farther instructed the jury, that there was a reference in the plaintiff's deed from Ferris to a former deed, and that the deed from Bedel to Gilman, which had been introduced, conveyed half of lot number three, to be taken off of the southerly end, and to go so far northerly as to make half the lot in quantity and quality as it then stood; that the court was inclined to think that this gave an election to the parties at that time, to have a division in which quality as well as quantity should be regarded, but that matter was immaterial in this case; that the deed could not be construed as creating a tenancy in common of the whole lot, and if it could be, the defendant had no title to make him a tenant in common with the plaintiff; that the mortgage deed, Rowell to Hutchins, gave a boundary on the south, by the line described in it, and under that deed there could be no claim southerly of that line.

The court farther instructed the jury, that if the deed from Bedel had conveyed half in quantity merely, the owners might have agreed upon a division, and such division would be binding. And so if it had conveyed half in quality, a division by the owners of the lot would be binding; but if no division was made prior to the conveyance to the plaintiff, and none had been made since, his title was to half in quantity only; that if the plaintiff was entitled to half in quantity, as that would cover part of the disputed tract, it would disprove the defendant's plea, and entitle the plain-

tiff to a verdict on the second issue, and damages to the extent of the cutting on his part.

The court farther remarked, that there was an agreed boundary between the parties, on the west line of the lot at the pine root, which showed that the line between the parties had been fixed there; that there was also evidence respecting marks on trees, and other evidence respecting boundaries or corners on the east line on both sides, and that they might consider the probability derived from this evidence, from the deeds, and from the boundary on the west, whether it was divided, and if divided, the question then was where the division had been made.

The court farther directed the jury, that the external boundaries of the lot were important in this case only for the purpose of dividing the lot equally, if it had not been divided, and a line agreed upon by the owners; or, if a division had been made, the evidence respecting those lines might bear upon the question which line was the true one, that contended for by the plaintiff, or that by the defendant.

The jury returned a verdict for the plaintiff, and to an inquiry by the court, made for the purpose of putting the verdict in form, the foreman answered that they found a line agreed upon, as contended by the plaintiff. The defendant moved for a new trial on account of the rulings and instructions above set forth.

It appeared in evidence on the trial, that Moses F. Morrison was acting as the plaintiff's agent in preparing and conducting the case, and he was examined as a witness upon the trial. The defendant, after the verdict, offered certain affidavits tending to show that said Morrison had conversed respecting the merits of the case, in the hearing of some of the jury, while the case was on trial, and moved for a new trial for that reason.

The affidavits of all the jurors were taken by the plaintiff, from which it appeared that, with one exception, they heard no remarks from Morrison respecting the case; that one heard the words, " Gilman road," but nothing farther.

*Goodall* and *Morrison*, for the plaintiff, furnished a brief in vacation.

The following questions may arise in this case :

1. Should the plaintiff have been permitted to proceed to trial without paying the costs of the demurrer ?

2. Can the motion for judgment *non obstante veredicto* prevail ?

3. Did the plaintiff's deeds receive their true construction ? Or, if not, is it a sufficient cause for a new trial ?

4. Was the ruling as to the declarations of Jacob Rowell correct ?

5. Were the declarations of John Rowell admissible ?

6. Should the verdict be set aside for the reasons stated in the defendant's affidavits ?

I. There was no order for the payment of costs, unless the plaintiff should withdraw the new assignment. The justices of the several courts are authorized by statute to *grant* amendments, not to *order* them to be made against the will of the party standing in need of them. No court ever exercised such power. If it is optional with a party to ask an amendment, it must be equally so whether or not to take it upon the terms imposed. 2 *Call. R.* 1, *Fox* vs. *Cosby ;* 1 *U. S. Digest* 155.

II. A defendant cannot apply for judgment *non obstante veredicto.* When such a motion would have been proper on the plaintiff's part, all that a defendant can do is to move that the judgment be arrested. *Stephens' Pl.* 117 ; 5 *Wend. R.* 513, *Schermerhorn* vs. *Schermerhorn;* 4 *Wend. R.* 468, *Smith* vs. *Smith.*

There is no cause for arresting the judgment. The declaration is sufficient, and this court have decided that it was fully answered by the pleas upon which issues were joined. The demurrer was only to the new assignment, and was sustained because the declaration, having been fully answered, the new assignment was unnecessary. All the material allegations remained undisposed of, and the issues framed upon them untried. The law is well settled that where one of several issues is found in favor of the defendant, but such issue does not go to the merits of the case, the other issues must be tried, and if found in the plaintiff's favor, judgment must be rendered for him. 12 *Wend. R.* 475, *The People* vs. *Haddock; Howe's Practice* 270 ; 2 *Call. R.* 1, *Fox* vs. *Cosby ;* 2 *Wend.* 632, *Wright* vs. *Williams ;* 7 *Mass. R.* 25, *Fowler* vs. *Shearer ;* 1 *N. H. Rep.* 38, *Brown* vs. *Smith.*

III. The deed, Bedel to Gilman, did not constitute a tenancy in common. A tenant in common has an undivided interest in the whole and every part of the estate. Upon partition, one portion as well as another may be assigned to him. By the terms of this deed the grantee was limited to the south part, and could only go so far back as would give one half in quantity and quality. As the whole is greater than its half, there would be some place short of the north line of the lot above which he would have no interest; which proves that there was not a tenancy in common.

If there was such a tenancy, it was between the grantor and grantee. Yet no conveyance is shown from Bedel to any one under whom the defendant claims. Aside from the mortgage by Rowell to Hutchins, no title whatever is shown in the defendant to the triangle embraced in his plea of soil and freehold. If it is to be taken that Rowell was, by some means, a tenant in common with the owner of the south half, his conveyance to Hutchins by metes and bounds would be void as against the other tenant.

If no division has been made, is it now to be made according to quantity and quality as it was when the deed Bedel to Gilman was given? The case finds that Ferris was in possession under the deed to him. This deed does not refer to any other deed, and cannot be controlled by any other. His entry under this deed was long before the defendant's title (if he had any,) commenced, and it is not necessary for the plaintiff to go beyond it. He is entitled, as against the defendant, to all the land embraced in that deed.

It is now wholly immaterial whether the construction given to the plaintiff's deed is correct or not. To an inquiry by the court, before the jury separated or the verdict was recorded, the foreman answered that they found a line agreed upon, as contended by the plaintiff. The object of the inquiry is of no consequence. The agreed line was a fact found by the jury as much as if they had returned a special verdict to that effect. The use that may be made of that fact when found, can make no difference. It may as well be applied to sustain a verdict, and prevent endless litigation as for any other purpose. When there are two distinct

grounds upon which the jury may have found their verdict, the judge may properly inquire of them which ground they adopted, and they are bound by their oaths as jurors to make true answers. If it appear upon such inquiry that they have found it upon an illegal ground, it is well settled that it will be set aside. The right to put the inquiries does not depend upon the consent of the parties, but is a right to be exercised by the court in their discretion. 5 *Pick. R.* 296, *Hix* vs. *Drury ;* 6 *Pick. R.* 208, *Pierce* vs. *Woodward ;* 9 *Pick. R.* 426, *Parrott* vs. *Thatcher ;* 12 *Pick. R.* 525, *Dorr* vs. *Fenno ;* 18 *Maine R.* 87, *Smith* vs. *Putney.* The public have an interest in this matter not less than the parties.

IV. The ruling in relation to the declarations of Jacob Rowell while in possession of the north part, is in accordance with well settled principles of law. The declarations of those in possession of land are admissible against them, and all persons claiming under them. But when they would have a tendency to extend the boundaries of those who made them, they are not admissible unless accompanying and qualifying some act, and thus constituting a part of the *res gestæ.* 4 *N. H. Rep.* 213, *Shepherd* vs. *Thompson.*

V. It is well settled in England that traditional evidence is admissible to prove the boundaries of manors, parishes and hamlets. 1 *Stark. Ev.* 62 ; 1 *Phil. Ev.* 182 ; 14 *East R.* 331, (*in note*) *Nichols* vs. *Parker ;* 1 *M. & S. R.* 679, *Weeks* vs. *Spark ;* 6 *Ad. & E. R.* 525, *Thomas* vs. *Jenkins.* The doctrine that it is not admissible to prove the boundaries of private estates has never been adopted in America. 10 *Pet. R.* 436, *Ellicott* vs. *Pearl, and cases cited.* The weight of American authority will fully sustain the proposition that evidence may be received to prove the declarations of a deceased person as to the identity of a particular corner or boundary, provided such person had peculiar means of knowing the fact, and no interest to misrepresent. 8 *Leigh. R.* 697, *Harriman* vs. *Brown ; Swift's Ev.* 123 ; 9 *Conn. R.* 451, *Higley* vs. *Bidwell ;* 3 *McCord's R.* 227, *Speer* vs. *Coate ; Ditto* 258, *Blythe* vs. *Sutherland ;* 3 *Dev. Law R.* 340, *Sasser* vs. *Herring ;* 2 *Littell. R.* 159, *Smith* vs. *Nowells ;* 2 *A.*

*K. Marshall* 155, *Smith* vs. *Prewit ;* 1 *Cooke's R.* 142, *Beard's Lessee* vs. *Talbot ;* 3 *Dane's Abr.* 397, 398, *and cases there cited ;* 5 *N. H. Rep.* 37, *Lawrence* vs. *Haynes ;* 4 *N. H. Rep.* 213, *Shepherd* vs. *Thompson ;* 6 *Pet. R.* 341, *Boardman* vs. *Reed ;* 3 *Ham. R.* 282, *McCoy* vs. *Galloway.* Such evidence has been admitted from the necessity of the case. Landmarks are frequently formed of perishable materials, which pass away with the generation in which they were made, and by changes and improvements of the country are often destroyed. So it was here. The tree which marked the corner of the lot was swept away by a freshet, and not a vestige remained from which its locality can be ascertained.

They were also admissible as having been made against his interest. It appears that he had been in possession of the lot. Possession is *primâ facie* evidence of property. His ownership is presumed to continue until the contrary is shown, or a different presumption is raised from the nature of the subject. *Greenl. Ev.* § 47. It was not shown that John Rowell had parted with his interest at the time he made the delarations in question, and the fact that he had moved from the lot does not raise a presumption that he had parted with it. 10 *Johns. R.* 377, *Jackson* vs. *McCall.*

VI. In order to sustain the motion to set aside the verdict, the defendant must prove either that some of the jury heard such statements from the plaintiff's agent out of court as would have a tendency to influence them to find for the plaintiff, or else that he made such statements with that design.

None of the jury heard any such statements as it is alleged that he made. To prove this we have the affidavits of all the jurors. They certainly have no motive to perjure themselves. There ought not to be a suspicion cast upon their integrity. They must know whether they did or did not hear the alleged conversations, and their testimony in relation to it should be deemed conclusive, unless the defendant clearly shows that they do not state the truth.

The plaintiff's agent made no statements respecting the case out of court with the design of influencing the jury in the plain-

tiff's favor. His own affidavit is full and explicit upon this point. There is nothing to show that he is not to be believed in relation to it.

As the jury did not hear the conversations in question, the defendant could not possibly have been injured by them.

*H. Hibbard* and *Perley*, for the defendant. The case started with the admission that the pine root on the westerly line was a boundary between the parties. The admission is in effect that the defendants owned the northerly half of the lot. This was sufficient evidence of title in him to render it immaterial which party went forward in the introduction of the evidence. It was admitted that the parties were adjoining owners.

But there was evidence to show title in the defendant besides these admissions. The plaintiff showed Jacob Rowell in possession of the north part of the lot, claiming title, and put into the case a deed from him to S. & J. Hutchins. The plaintiff cannot say that Jacob Rowell was not the true owner, as he introduced the evidence. In the absence of evidence to the contrary, it is to be presumed that a party enters under the true owner. 3 *N. H. Rep.* 49, *Lund* vs. *Parker;* 16 *Johns. R.* 293, *Jackson* vs. *Thomas.*

There was evidence also that the lot was called the Rowell lot, that Rowell sold a piece of the land to Chace, that Chace sold to Weeks, and Weeks was in possession, claiming title to the line now claimed by the defendant.

The deed, Bedel to Gilman, under which the plaintiff claims, constituted a tenancy in common between the owners of the lot. The true construction of it is, that upon a division the grantee is to have half in quantity and quality upon the south end of the lot.

The declarations of John Rowell, introduced by the plaintiff, were incompetent. The case finds that he lived on the land with Jacob Rowell, but it does not appear that he had any title. If he had any interest, the declaration was in favor of his interest. But he had moved off the land, and had no interest. Moreover, the declaration was incompetent, as it was not respecting what he knew, but must have related to common reputation of the neigh-

borhood respecting the corner. Rowell, too, had parted with the possession, and the evidence related to a mere declaration which he had made, and was incompetent, as hearsay evidence.

In *Shepherd* vs. *Thompson,* 4 *N. H. Rep.* 213, the real point decided was, that a party's declaration in favor of his own interest was not admissible. No case there cited extends the rule as far as it was extended on the trial of this case. See *Gresley on Evidence,* 281; 6 *N. H. Rep.* 210, *Hinkley* vs. *Davis;* 7 *Cranch R.* 290, *Queen* vs. *Hepburn.* In *Boardman* vs. *The Lessees of Reed,* 6 *Peters' R.* 328, the court said hearsay evidence, and the declarations of deceased individuals in relation to boundaries, may be received; but on examination it will appear that the case does not apply here. The cases which favor the introduction of such evidence seem to be confined to declarations respecting a boundary in which several are interested, or when there was some public right. A verdict will be set aside for the least intermeddling with the jurors. 13 *Mass. R.* 218, *Knight* vs. *Freeport;* 1 *Pick.* 38, *Amherst* vs. *Hadley.* We are not in such case to go into an inquiry whether what was said in the presence of the jurors operated to influence the jury. This would be impracticable. It is sufficient if it might have that tendency.

*Wilcox,* in reply, referred to *Greenl. Ev.* 170, *and authorities there cited;* 2 *Cowen's Phil. Ev.* 629; 12 *Pick. R.* 532, *Van Deusen* vs. *Turner;* 5 *N. H. Rep.* 91, *Page* vs. *Wheeler,* 5 *Pick. R.* 302, *Hix* vs. *Drury.*

PARKER, C. J. Some of the points taken at the trial have not been pressed upon the argument, but as they have not been abandoned we shall notice them briefly.

The opinion of the court in favor of the defendant, upon the demurrer to the new assignment, was founded upon the fact that the whole matter brought in controversy by the writ was in issue by the pleadings of the parties, without the new assignment, and before its introduction. Upon the delivery of this opinion the plaintiff asked leave to amend by withdrawing the new assignment, and the leave was granted upon the usual terms, that he pay the

Smith *v.* Powers.

costs. Upon farther consideration, the plaintiff declines to do this, and the objection to his proceeding with the action until the costs are paid, brings us to the consideration of the effect of the motion and of the order upon it.

If the court, by the order, had required costs to be paid, then the defendant ought not to have proceeded until the requisition had been complied with. But the court made no such requisition. The plaintiff asked leave to withdraw a portion of his pleadings. The court did not order that he should do so, but gave him permission to do so on his complying with certain conditions. This is a mere license, and leaves the party at liberty to consider whether he will act upon the license, with such a condition annexed to it. If he does, he must comply with the terms. If he does not, the case stands as if he had not applied for the permission.

The plaintiff declined to avail himself of the liberty given him. There is no reason why the court should require him to do so. Judgment is, then, to be entered on the demurrer, for the defendant. But this judgment is no broader than the matter in issue, upon which it is founded. It can apply only to the demurrer, and that was to the new assignment. The other pleadings are left for farther proceedings, and they present issues of fact for trial. The court cannot deprive the plaintiff of his right to try these issues because he has failed upon another issue framed between the parties. Upon that issue the defendant will tax such costs as he is entitled to. Perhaps this may not be to so great an amount as the terms imposed would have given him, if the the plaintiff had acted upon the leave given him. But that cannot change the plaintiff's rights. The taxation of costs is not now in question. Perhaps, if the court had adverted more particularly to the state of the pleadings, the terms of withdrawing the new assignment might not have embraced so great a portion of the costs. It is immaterial how that may be. It is sufficient that the defendant is not prejudiced by the plaintiff's having asked a favor of the court, which he declined to accept because the grant of it was burdened with a condition.

This statement of the situation of the pleadings would seem to

dispose of the motion for judgment for the defendant *non obstante veredicto*, if the defendant could in any case have such a judgment. It is very apparent that he could not be entitled to it because he had prevailed upon one of three issues, the other two being found against him; more especially when the issue found in his favor does not relate to the merits, but only involves a question respecting the formality of the pleadings; whereas, those found against him involve the whole merits of the case. But the authorities cited by the plaintiff's counsel show that a defendant cannot have such a judgment. He is entitled only to an arrest of judgment, when the plaintiff has a verdict but it appears that the action is not sustained.

The evidence did not show the parties to be tenants in common of the tract of land in dispute. The deeds introduced do not show that such a tenancy ever existed between any prior owners of the lot. Whether a conveyance by the owner of the whole lot, of the south half of it in quantity and quality, would operate as a conveyance of one half in quantity only, on account of the uncertainty which would otherwise exist respecting the dividing line until settled by agreement of the parties, or whether some proceeding might be had in such case to settle the line of separation in case the parties failed to agree, we need not now determine. The deed of Bedel to Gilman, which contained that description, and the subsequent deeds, which followed substantially the language of that deed, undoubtedly conveyed an estate; but it could not be in the north half of that lot, for that could not be included in the description, and the estate conveyed in the deed could not have been set off to the grantee in the north part of the lot, for that reason. This shows clearly that the different owners of the lot were not tenants in common, but held in severalty. The only question which could arise was where the dividing line should be located.

But if it were supposed that the deed, Bedel to Gilman, originally created a tenancy in common, that could not avail the defendant; for if that were so, the defendant's evidence would not make him a tenant in common through any deed or possession; and moreover, the case shows conclusively that partition had been

made, and that the parties held in severalty. Both parties claimed to a pine root on the west line of the lot, as a boundary between them; and each claimed to a monument on the east line as a boundary also. But these monuments were different. Each put in evidence to show a marked line between the pine root on the west, and the monument he claimed to on the east. The controversy was, which of these two lines was the true one. The answer of the jury that they found that a line had been agreed upon, as contended by the plaintiff, makes a part of the case. The court may inquire of a jury upon what grounds they found their verdict, and the answer may be considered upon a motion for a new trial. 6 *Pick. R.* 208, *Pierce* vs. *Woodward;* 12 *Pick. R.* 525, *Dorr* vs. *Fenno;* 18 *Maine R.* 87, *Smith* vs. *Putney.*

The evidence that Jacob Rowell, while he lived on the lot, pointed out the boundary upon the east, to which the plaintiff claims as the corner between him and the plaintiff, and spoke of the bound as being in that place, was admissible. This evidence would have been competent if Rowell had still been living, as the act and declaration of a party in possession, limiting his possession, and thus evidence against him and those who come in under him. 4 *Johns. R.* 230, *Jackson* vs. *Bard;* 10 *Johns. R.* 377, *Jackson* vs. *McCall;* [14 *N. H. Rep.* 19, *Pike* vs. *Hayes.*] His declarations, tending to favor his interest by extending the limits of his possession, could not have been proved by him in his own favor, and were not competent evidence in favor of the defendant, who has succeeded him, whether he does or does not hold under Rowell's title, because Rowell had an interest to make them. 4 *N. H. Rep.* 213, *Shepherd* vs. *Thompson.* And for this reason those declarations are not competent, notwithstanding Jacob Rowell is now dead.

The declarations of John Rowell respecting the south-west corner of the lot are not liable to that objection. It does not appear that he had any interest in making them, or any purpose to subserve thereby. It is true, as the defendant's counsel contended, that the decisions in England seem to restrict the evidence of the declarations of deceased persons respecting boundaries to cases which relate to public rights, or to boundaries in

which several persons are interested, or to what the deceased said relative to the public opinion respecting the boundary. But the testimony has not been limited in this country. The authorities are amply sufficient to sustain the principle that the declarations of a person deceased, who appeared to have had means of knowledge, and no interest in making the declarations, are competent evidence upon a question of boundary, even in a case of private rights. 5 *N. H. Rep.* 37, *Lawrence* vs. *Haynes ;* 3 *Dane's Abr.* 397 ; 9 *Conn. R.* 447, 451, *Higley* vs. *Bidwell ;* 6 *Binney R.* 62, *Caufman* vs. *Congregation of Cedar Spring.* Upon this principle the declarations of John Rowell were well admitted. It was in evidence that he pointed out the boundary.

The motion to set aside the verdict on account of the misbehavior of the plaintiff's agent, cannot prevail. The affidavits of all the jurors, except one, show that they heard no remark made by Morrison relative to the case. That one testifies that he heard nothing except the words, " Gilman Road." He was then engaged in conversation ; and those words, but nothing else which Morrison said, attracted his attention.

*Judgment on the verdict.*