## Case No. 4,108.

### DUBOIS v. NEWMAN et al.

[4 Wash. C. C. 74.][1]

Circuit Court, D. Pennsylvania. April Term, 1821.

EJECTMENT — PENNSYLVANIA LAND WARRANTS—RETURN OF SURVEY—PRIORITY OF LOCATION.

1. "In Pennsylvania, a warrant, accompanied by payment of the purchase money and a legal survey, confers upon the warrant holder a legal title, sufficient to enable the owner of it to maintain an ejectment. This doctrine, peculiar probably to this state, was, though not without difficulty, adopted by the supreme court of the United States, in reference to Pennsylvania titles, in the case of Sims v. Irwin [3 Dall. (3 U. S.) 425]. This court has always, since that decision, acted upon the principle it establishes; but we do not feel either inclined or authorised to go one step further. To complete the legal title, the plaintiff must show a legal survey. He must produce the survey regularly made, or at least he must prove by parol evidence, or otherwise, that a survey of the land in dispute was actually made for the holder of the warrant."

2. A paper returned into the land office of Pennsylvania by a deputy surveyor, and there accepted as a return of survey, which purported to be a draft of a tract of land, said to have been surveyed by an assistant to a deputy surveyor, is evidence, as it had been received by the land office.

3. If the warrant for lands be special, that is, sufficiently descriptive in its calls to enable others to locate other warrants on the adjoining lands, it amounts to an immediate location; and on the payment of the purchase money to the state, a title commences against the state, and others who may afterwards obtain a right to the same land from the state. It is the duty of the first warrant holder to follow up his right and have it surveyed in a reasonable time, at the peril of losing his priority by the superior vigilance of a subsequent locator.

4. Belief, on the statement of hearsay evidence by a public officer, is no better than that of any other individual. He is expected to certify facts, and such as are of an official nature.

Ejectment for two hundred and eighty acres of land in Susquehanna county. The

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

title of the lessor commenced with a warrant, dated the 13th of June, 1792, granted to Abraham Dubois, for three hundred and fifty acres, lying on the Susquehanna river; bounded by lands of H. Drinker on the north east, by vacant hills on the south east, and on the north west by land of Minna Dubois. On the 14th of the same month and year, the purchase money was paid.

The plaintiff then offered to read a paper, returned by Stevens, a deputy surveyor, into the land office in July, 1816; and there accepted, as a return of the survey of this land. It purports to return a draft of a tract of land, said to have been surveyed for Abraham Dubois, by Jacob Hart, assistant to Mr. Caruthers, deputy surveyor for the above county, in October, 1794; it further certifies, that, by an examination on the ground, made on the 20th of January, 1815, and by the traverse of the river since taken, the survey appears to have been made as above stated. The reading of this paper was objected to, because it was not a survey by Hart in 1794, nor is it a survey made by Stevens, who returns it. He speaks of it as a survey by Hart, merely from hearsay. It certifies no official act, and is, therefore, no better than a certificate given by a person not an officer.

Mr. Sergeant, for lessor of plaintiff.
Mr. Rawle, for defendant.

WASHINGTON, Circuit Justice, delivered the opinion.

The paper is open to all the objections made to it by the defendant's counsel, and we should therefore reject it, were it not that it has been accepted by the proper officers of this state as a return of survey, and it may therefore be considered as such, as between the plaintiff and the state, no right in any third person appearing at this time to have intervened. Besides, the plaintiff may follow up this evidence by proof of an actual survey. Should the defendant set up a title to this land under the state, the objections made to the effect of this paper will have their full weight. In the present stage of the cause, we see no legal reason why it should not be read.

The plaintiff then proved that the warrant was delivered to the surveyor, Caruthers, in August, 1792. The title was regularly deduced from Abraham Dubois to the lessor of the plaintiff.

The defendant claims under an application for a settlement right, commenced in 1809, and a warrant dated in May, 1815, and the purchase money then paid.

Evidence was given by the plaintiff for the purpose of proving that this land was in fact surveyed about the time mentioned in the certificate of Stevens; and very strong evidence on the other side to show that the land in dispute never was surveyed under

the warrant to Dubois, but that the surveyor had located the warrant on the hills back of this land.

The question principally debated by the counsel was, whether the warrant was surveyed or not.

WASHINGTON, Circuit Justice (charging the jury). There is but a single point of fact to be ascertained in this cause, and when this is accomplished, it will decide whether the verdict shall be for the plaintiff or for the defendant. That fact is the actual survey of the warrant of 1792 to Abraham Dubois upon the land in question. But as the counsel have extended their observations to other topics, such as the different kinds of warrants; the greater necessity of surveying one kind than the other; and of accomplishing that operation within a reasonable time; it may be proper for the court to state what is the law in relation to those subjects, in order to clear the case of all such considerations, by showing that they are not involved in the present controversy. If the warrant be special, or in other words, sufficiently descriptive in its calls to enable others safely to locate other warrants on the adjacent residuum; it amounts to an immediate location; and when the purchase money is paid, an inceptive title commences against the state, and others who may afterwards derive a right to the same land from the state. But then the first warrant holder is expected to follow up this equitable right by having his location actually surveyed by a proper officer, and this within a reasonable time; at the peril of losing his priority by the superior vigilance of a subsequent locator, who has paid his purchase money, and had his location surveyed. For if his vigilance has not extended thus far he is in pari delicto with the first locator, and it shall not lie in his mouth to question such prior right, by charging the owner of it with a want of diligence, of which he is himself equally guilty. A general or indescriptive warrant, amounts to a location when it is surveyed, and not before. The whole of this doctrine was gone into in the case of Lewis v. Meredith [Case No. 8,328], decided some years ago in this court.

It will be observed, from what has been said, that whether the warrant be special or general, it must nevertheless be surveyed, and that the comparison of titles can only become a question where the subsequent locator has gone to the length of having his warrant surveyed. But the defendant's warrant not having been surveyed in this case, it is of no consequence whether Abraham Dubois was diligent or tardy in having his warrant surveyed, since the defendant, who appears in court without a survey, has no right to question the plaintiff's right on that account. The defendant has an equitable title, and the plaintiff's title is no better, (provided his warrant has not been surveyed on the land in dispute) except that it is prior in time; but no question can arise out of that circumstance to affect this cause, or to become the subject of your deliberations.

After having made these preliminary remarks, for the purpose of relieving you from the consideration of matters which do not belong to the cause, and which can tend only to distract your attention, and withdraw it from the single question which you have to decide; I proceed to state, that that question is, was the warrant of Abraham Dubois surveyed at any time, upon the land in dispute? If it was, the plaintiff is entitled to a verdict, if it was not, your finding must be against him. To enable the lessor of the plaintiff to recover in ejectment, it is absolutely necessary for him to prove a legal right of entry, and this he must do, although the defendant should show no title at all, save his naked possession. If the plaintiff's title be merely equitable, it will be necessary for him to assert it before some other forum than this; here he cannot be heard, because he has not such a right as will entitle him to recover in a court of law. What constitutes a legal title to land derived from the state, must always depend upon the laws and usages of the state where the land lies. In those states with whose laws I am acquainted, the legal title passes by the patent, or grant of the government, and by that only. In Pennsylvania, a warrant, accompanied by payment of the purchase money and a legal survey, confers upon the warrant holder a legal right, sufficient to enable the owner of it to maintain an ejectment. This doctrine, peculiar probably to this state, was, though not without difficulty, adopted by the supreme court of the United States, in reference to Pennsylvania titles, in the case of Lessee of Sims v. Irwin, 3 Dall. [3 U. S.] 425. This court has always, since that decision, acted upon the principle it establishes; but we do not feel either inclined or authorized to go one step farther. To complete the legal title then, the plaintiff must show a legal survey. He must produce the survey regularly made, or at least he must prove by parol evidence or otherwise, that a survey of the land in dispute was actually made for the holder of the warrant.

This then is the isolated question which you must decide, and upon which the fate of this cause must depend. In order to prove the fact of an actual survey, the plaintiff relies, in no small degree, upon the certificate of Stevens returned to the land office, and there accepted in the year 1816. This paper the court permitted to be read in evidence, not as a legal return of survey, but as affecting the right of the state; no other right derived from the state appearing in that stage of the cause, to subsist in the defendant, or in any other person. Having been accepted, it formed a link in the chain of title, and might be followed up for aught the court could say, by proof of an actual survey.

We now see that the defendant claims an equitable title under the state, by warrant and payment of the purchase money. And although he cannot, as before observed, call the plaintiff to account for the want of due diligence in perfecting his title, he may nevertheless demand of him to prove that an actual survey was made; and he may question the sufficiency of this paper, as well as of any other evidence offered to establish that fact. It is essential that this distinction should be understood and constantly kept in mind. The reason on which the first part of the proposition is founded, has been already explained. That which governs the latter part, obviously grows out of the necessity which the law imposes on the plaintiff to prove the existence of a survey as an essential part of his title—not that it was made in or out of time, but that it was made. Now if the certificate of Stevens be in reality no survey at all; is it possible that the board of property, by accepting it as such in 1816, can give it validity so as to cut out the equitable title of the defendant, which was complete in 1815; and which is sufficient for him, unless the plaintiff can prove a legal survey of his warrant? Or, is it possible that the acceptance by the officers of government of a paper as a survey, which to the apprehension of every rational being is no survey, can have the magic power to hoodwink the court and jury, so as to make them believe and say, that it is, what they perceive it is not? The affirmative of these questions this court cannot accede to. For one, I aver that I cannot give my assent to such a doctrine.

What then is the nature and the value of this paper? Stevens certifies that he has heard it said, and he believes it, that the warrant of Abraham Dubois was surveyed on this land in the year 1794. Now the belief, or the statement of hearsay evidence by a public officer, is no better than that of any private individual. He is expected to certify facts, and such as are official. Here he certifies no fact, and if he did, it is not official. It differs therefore in no respect from other certificates, which, not being given under the sanction of an oath and in a due course of examination, must be totally disregarded. But the paper proceeds farther to certify, that he, Stevens, had examined the ground, and that a survey appeared to him to have been made in 1794. What is this but mere evidence, on which, in addition to the hearsay, he grounds his belief? He does not certify that the draught which accompanies the certificate was made by the former surveyor; or that he, Stevens, had made it from the field notes or other works of that surveyor, or that he had himself made a survey. In short, the paper in no respect bears the stamp of an official certificate, and therefore proves nothing of itself. Stevens was afterwards examined as a witness in this cause, and his deposition tends strongly to prove, how delusive the certificate is upon the subject of a survey by Hart. He states that the warrant was put into his hands in 1815, by the executors of Abraham Dubois, and also a diagram, and that he was requested to survey the land. He went to the hemlock on the river, which, being the corner to Minna Dubois's tract, was no doubt easily found. He then went to the pine at the end of that line; and on a subsequent occasion he went to the post at the end of the second line. He boxed none of the trees, and made no examination of the other lines of the draught; but concludes with saying, that he was satisfied that the lines corresponded with a survey of 1794 or earlier. He does not assign a single reason for the satisfaction he felt on this point; and it will be for you, gentlemen, to say, whether so far as Stevens's deposition goes, you are satisfied of the fact. Minna Dubois, another witness examined by the plaintiff, states, that he, as the agent of Abraham Dubois, delivered the warrant to the deputy surveyor in 1792. That in 1794 he went with the surveyor to point out the land, and that he began at the hemlock, corner to witness's land, and ran the first line, when the witness went away. That the surveyor afterwards told him he had completed the survey, and demanded his fees, which were paid. And further, that the witness had since paid the taxes as agent aforesaid.

The effect of this deposition is met by the testimony of many witnesses to prove (1) that Minna Dubois is not reputed, or generally believed, to be a man of veracity, even under oath; and (2) to contradict his testimony, by proving that he had often, when he spoke of the land in controversy, asserted it to belong to the state; and for this reason had always refused to pay the taxes on it. That his brother's land lay in another place on the hills, and that he himself had taken out a warrant for this land in his son's name, to whom it belonged. Evidence was also given to prove that Abraham Dubois had, on two or three occasions, declared that this was not his land, but that it lay on the hills; and that the surveyor had very improperly executed his warrant there, instead of obeying its calls. Two other witnesses prove, that they examined the lines of this land, and boxed many of the trees, from which they were satisfied that no survey of this land was made in 1794. If upon this evidence the jury are satisfied that the warrant of Abraham Dubois was surveyed on the land in dispute, the lessor of the plaintiff is entitled to their verdict; if otherwise, then they will find for the defendant.

Verdict for plaintiff.