# BENNETT LAWRENCE *versus* BENJAMIN HAYNES, and another.

L. was the owner of a lot of land in the town of G. bounded upon the original line between the towns of G. and N. and H. was the owner of a lot of land in the town of N. adjoining L.'s said lot, and bounded on the said original line ; it was held that an adjudication of the court of sessions establishing the said line, in a suit between the towns, was not evidence of the true line between L. and H.

But perambulations of the said line by the selectmen of the towns were held to be evidence in a suit between L. and H.

THIS was an action of trespass for breaking and entering the plaintiff's close in Gilmanton. The defendants pleaded in bar that the *locus in quo* was the soil and freehold of the defendant, Haynes, and issue was joined on the matter of the plea.

The cause was tried here at February term, 1828. The *locus in quo* was claimed by the plaintiff as part of a lot laid out in the town of Gilmanton, next adjoining the line between Gilmanton and Northfield, which lot was admitted to be the property of the plaintiff.

And it was admitted that the defendant, Haynes, was the owner of a lot of land in Northfield adjoining the plaintiff's said lot, and laid out as adjoining the original line between the two townships. And the defendant, Haynes, claimed the *locus in quo* as part of his said lot. The question, was therefore, whether the *locus in quo* was within the original limits of the township of Gilmanton, or within the limits of the township of Northfield.

The plaintiff, in order to show that the original line between the townships was such as to include the *locus in quo* within the limits of Gilmanton, offered to read to the jury a record of the proceedings of the court of sessions upon a dispute in 1822, between the two towns as to the true line between them, by which the said line

<div style="margin-left: margin note">

Lawrence
*v.*
Haynes, et a.
</div>

was so established as to include the *locus in quo* within the limits of Gilmanton.

He also offered to prove that, in 1791, the selectmen of the towns, by mutual consent, perambulated as the true line between the towns, the line which was established by the court of sessions in 1822.

To this evidence thus offered by the plaintiff, the defendants objected and it was rejected by the court.

A verdict having been returned by the jury for the defendants, the plaintiff moved for a new trial, on the ground that the said evidence ought, by law, to have been admitted.

*Sullivan and Moody*, for the plaintiff.

*Mason and Walker*, for the defendants.

The opinion of the court was delivered by

RICHARDSON, C. J.  The plaintiff in this case demands a new trial on the ground that competent evidence offered by him was rejected by the court as incompetent. Part of the evidence rejected was a record of an adjudication of the court of sessions establishing the line between Gilmanton and Northfield in a case between those two towns.  And one question now to be decided is, whether that record was between these parties evidence to show the original line between the townships ?

It did not appear that either of these parties was in any way a party to those proceedings.  The whole must therefore be considered, with respect to this plaintiff and defendant, as *res inter alios acta*, and we consider it as settled, that no record of an adjudication can be used as evidence of the facts upon which it is founded, in a suit between persons who are strangers to the adjudication. 2 N. H. Rep. 190, *Burril* v. *West* ; Starkie's Ev. part 2, sec. 60 and sec. 57.

We are therefore of opinion that the record of the proceedings of the court of sessions was properly rejected.

The other part of the evidence rejected, was the perambulation of the line by the selectmen of the two towns,

in 1791. This evidence is in its nature entirely different from the evidence which the record of the court of sessions furnishes, and in order to determine whether it was properly rejected, it is necessary to see what a perambulation is, and how the evidence it furnishes, bears upon the matter in controversy between these parties.

It was provided by the provincial act of 5 Geo. 1, cap. 87, (Prov. Laws, 136,) "that the bounds of all townships within this province shall be perambulated betwixt town and town, and marks renewed once in three years, by two of the selectmen of each town, or any other two men whom the selectmen shall appoint." This provincial act remained in force until the statute of February 8, 1791, went into operation. This statute provides "that the lines between towns shall be perambulated and the marks and bounds renewed, &c. once every seven years, forever after, by the selectmen of each, or by such person or persons as they shall, in writing, appoint for the purpose, and their proceedings shall be recorded in their respective town books." Thus it seems that from the year 1719, down to the year 1792, it was the duty of the selectmen of the several towns to perambulate the lines between their respective towns once in three years, and renew the marks, and that from the year 1792, it has been their duty to perambulate the lines, once every seven years, to renew the marks and bounds, and to record their proceedings in their respective town books. The object of these provisions in the statutes has been to prevent disputes with respect to the limits of towns. As the perambulations are made by the selectmen of both towns jointly, and as it is their duty only to perambulate existing lines, and renew the marks and bounds, whatever line they agree to run and mark must be presumed to have been supposed by them to be the true line. It is not to be supposed that the selectmen of either town would agree to any change of the line. It is well known, that selectmen are in general

as jealous of encroachments upon the territory of their towns, as they would be of encroachments upon their own inheritance. If the policy of the law which requires these perambulations is not altogether false and idle; if it has any tendency to accomplish its object, these perambulations when legally and amicably made must be evidence of the lines between towns. Indeed, when any particular line has been long thus perambulated, the perambulations afford very strong evidence that it is the true line.

The lines of our towns have been so frequently perambulated, and the bounds and marks so frequently renewed, that the selectmen have always had the means of ascertaining the true line. It has been their duty to preserve the marks and monuments of the real line. And it has in all cases been the interest of one party, at least, in every case to adhere to the real line, and to suffer no encroachments. It would be very singular if the circumstance that a line has been perambulated and marked as the true line by men who had the means of knowing whether it was the true line or not, and whose duty and whose interest bound them to perambulate and mark no line but the true one, must be held to afford no evidence of its being the true line. It cannot be so holden. It is in all cases evidence. A single perambulation is evidence. When a particular line has often been perambulated, and the bounds renewed and recognized by the selectmen of both towns, it is strong evidence of its being the true line. Phillip's Ev. 183 ; 1 M. & S. 685 ; 14 East, 330, note, *Nichols* v. *Parker* ; Starkie's Ev. part I, sec. 42.

The evidence resulting from the perambulation of the lines between towns is of the same nature as the evidence which results from the acts of the owners of adjoining lands, when they perambulate the lines between their lands and by agreement renew the marks and monuments.

We will now consider how the evidence, which goes to show the original line between Gilmanton and Northfield, bears upon the question between these parties.

Our townships were originally granted to many individuals as tenants in common, and were afterwards divided by those individuals into lots, which were distributed among the proprietors, and thus the proprietors became severally seized of their respective lots. As soon as there was a sufficient number of inhabitants in a township, they were incorporated as a town, and the bounds of the township were in general made the bounds of the territory, over which the corporation exercised its powers. And thus the bounds and lines of the town were the same as the bounds and lines of the lots lying on its borders, and when the lines of the town were perambulated, one line at least of each of those lots was also perambulated.

The lines of those lots and of the towns have not in all cases remained the same. The lines of towns have sometimes been changed by the legislature, and sometimes by the mistake of those who perambulated them. The lines between the lots may have been in some instances changed by agreement or mistake. But in the case now before us, it is admitted that the true original line betwen the towns is the true line between the lands of these parties.

It is very clear then that whatever is proper evidence in this case to show what was the original line between the two townships, is evidence to show the line between these parties.

It can hardly admit of a question, that these perambulations are evidence in a controversy between towns as to the lines between them. But are they evidence in a suit between individuals? We think that they are. The declarations of deceased persons, who had no interest to misrepresent, are evidence of boundaries betwen the lands of individuals. And it seems to us, that these

perambulations, which are made by men who must be
considered as public officers, and are made for public
purposes are entitled to a degree of credit, which the
declarations of deceased persons can, under no circum-
stances, claim.   Starkie's Ev. part 2, sec. 47.

*Verdict set aside and a new trial granted.*