# GRAFTON,

## JULY TERM, A. D. 1844.

---

## COBLEIGH *vs.* YOUNG.

An entry and survey of a lot of land, with a marking of lines and boundaries by one claiming title, is good evidence of possession, and one who enters under a deed from him who has made such entry is in under color of title.

Where a vote of a proprietary, granting lands purported by the record to have been passed at a legal meeting, it is to be presumed as against the proprietary, until the contrary appears, that the meeting at which the vote was passed was duly warned and held; and it is not necessary to introduce evidence of these facts in the first instance.

The same presumption arises against persons claiming under the proprietary by a subsequent conveyance, and against any one who does not appear to have any title.

TRESPASS, alleging that the defendant broke and entered the River lot, No. 13, in the town of Lisbon, on the west side of Ammonoosuc river, containing 100 acres, and cut and carried away certain timber.

*Plea,* the general issue.

The plaintiff offered in evidence a deed from William Atkinson and his wife, Anna Atkinson, (formerly Anna Little,) to himself, dated Sept. 19th, 1835, acknowledged and recorded Oct. 10th, 1835, conveying the land described in the writ.

He also introduced the evidence of a surveyor, that in October, 1833, Atkinson requested him to run out several lots of land in Lisbon, and take possession of them as publicly as he could, and notify the neighbors of his claim; that Young, the defendant, pointed out the boundaries of lot No. 13, and that the witness run out the lot, established the monuments, and told the

defendant of Atkinson's claim to it; that the defendant made no claim to it, but spoke of other persons trespassing upon it, and said Atkinson asked a good deal more for it than it was worth. The same witness, testified that in running the south line of the lot, he came to a small clearing, that the defendant said he cleared it, and had told them of his clearing there, and they made no objection; that he said it was worth little or nothing; that it cost as much to clear it as it was worth.

The plaintiff proved that the defendant cut timber upon the lot in the latter part of February and early in March, 1840.

The defendant offered evidence tending to show that his father, John Young, some forty or fifty years ago was in the occupation of lot No. 14, situated west of, and adjoining, No. 13, (the *locus in quo*,) and that he cleared over the line of No. 14, and occupied a part of lot No. 13, and cut wood upon that lot, and that after his father's death he, the defendant, occupied and improved the land in the same manner. No conveyance in any mode from John Young to the defendant was produced.

The defendant also offered in evidence a copy of a deed, purporting to be from George Aldrich to Elijah Howard, dated December 29th, 1811, conveying lot No. 13, which appeared to have been acknowledged, but the certificate of acknowledgment had no date, and which was recorded May 15th, 1840. Howard testified that he could not find the original deed, but he paid Aldrich for it by lands situated in Canada.

The defendant also offered a deed of the lot from Howard to himself, dated April 4, 1814, the acknowledgment having no date, and which was recorded Sept. 24th, 1836. He also offered a deed from himself to Howard, conveying the lot, dated May 4th, 1834, acknowledged the same day, and recorded Sept. 24th, 1836; also a deed from Howard to himself, dated August 7th, 1837, acknowledged the same day, and recorded August 16th, 1837, conveying one undivided half of the lot.

The plaintiff farther offered in evidence a copy of the original charter, granting to Joseph Burt and others the township of Concord, (now Lisbon,) in Grafton County, August 6, 1763; also copies of deeds from several of said grantees, conveying their rights,

and other mesne conveyances, through which he attempted to show a title to sixteen of the shares in said township in Josiah Little in January, 1784; also a deed from Edward Little to Josiah Little, dated July 23d, 1817, acknowledged the same day, recorded July 30th, 1827, conveying all his real estate situated in the State of New-Hampshire, wheresoever the same may be, and in whatsoever town or plantation; also a deed of partition of the estate of Josiah Little, dated March 16th, 1832, acknowledged the same day, and recorded May 12th, 1832, by which Edward Little and others conveyed to William Atkinson and wife all the lands in Lisbon of which said Josiah Little died seized and possessed.

The plaintiff also offered in evidence a copy from the records of the Proprietors of Concord, purporting to show that at a meeting of the Proprietors, holden October 31st, 1799, by adjournment from July 15th, 1799, upon an article in the warrant, " to see if the Proprietors will agree to make division of their lands in said Concord, agreeably to allotments already made, or proceed to allot anew and divide the same," they proceeded to draw two lots to every original right that had not been applied, agreeably to petitions, to cover particular lots, and one lot to every original right that had covered only one lot. This evidence was offered for the purpose of showing that upon this division lot No. 13 was not drawn. He then introduced a copy from the records of the Proprietary, as follows, viz. :

"May 15th, 1832.

" At a legal meeting of the Proprietors of Concord, (now Lisbon,) holden at the house of Levi W. Cobleigh, Esqr. :

" Whereas a vote, passed at a legal meeting of the Proprietors of Concord, holden on the eleventh day of November, A. D. 1812, authorizing Edward Little to agree with any proprietors to pitch the undivided lands for their shares and to convey the same to them; and whereas the said Edward Little did, in pursuance of said vote, agree with, and convey to certain proprietors, land for their shares, and did purchase of others undivided shares of land in said town, so that the whole interest of this proprietary vested in him and Josiah Little, and afterwards wholly in said

Josiah Little, who has since deceased, and now has passed from the other heirs of said Josiah to Anna Atkinson, wife of William Atkinson, one of the heirs of said Josiah,—

"Therefore, in order to close the proprietary,

*Voted,* That all the undivided land now remaining in the proprietors be assigned to said Anna Atkinson, in full for all the rights or shares she owns.

Moses Emery, Jr., Proprietors' Clerk."

No evidence was offered of the warning of the meeting, except what is contained in the vote itself.

The defendant objected to the evidence of the transfers of the rights of the proprietors to Josiah Little, that, taking it to be all true, it would show merely that Josiah Little had not more than nine rights or shares in the township, and that if the indenture of partition conveyed them to the plaintiffs, it would give them only an undivided interest in the proprietary, which would not authorize them to sustain any action. He objected to the deed of Edward Little to Josiah Little, that it was not shown that the grantee had any interest in the town of Concord; to the evidence offered to show the execution of the deed of partition of the estate of Josiah Little by some of the grantors; to the evidence of the draft of lots in 1799, that no evidence was offered that the meeting was duly called and held; and to the vote assigning the undivided lands to Anna Atkinson, " for the reason that no evidence is given of a meeting duly called or legally holden, at which said vote was passed, and that it was a modern meeting; that it should be proved that it was called by one sixteenth in interest of the proprietors, notified according to law, and held in pursuance thereof in a legal manner."

Upon the foregoing evidence a verdict was taken for the plaintiff, by consent, subject to the consideration of this court upon the foregoing case.

*Goodall* and *Morrison,* for the defendant. The defendant is in possession; the plaintiff must therefore shew a good title with immediate right of possession. No matter how many "rights" vested in his grantors, unless the title to the *locus in quo* also

passed to them, the corporate Proprietary alone could maintain the action. 4 *N. H. Rep.* 99, *Colburn* vs. *Ellenwood;* 5 *Greenl. R.* 164, *Chamberlain* vs. *Bussey.*

There is no title shown to the *locus in quo* in the plaintiff or his grantors prior to the meeting in 1832. His right to recover depends principally upon the effect to be given to the vote which, he claims, was passed at that meeting.

I. It does not appear that that vote was the act of the corporation, or of any of the corporators. The most that can be said in its favor is, that some persons assuming to be corporators caused it to be recorded. Their claim to be, is the only evidence that they were such. This alone cannot be received as evidence that they were corporators. *See* 7 *N. H. Rep.* 543, *State* vs. *Wilson,* for a similar case.

II. It does not appear that the vote was passed, (if at all,) at a meeting called and holden in the manner required by statute; it was, therefore, wholly void. 18 *Maine R.* 213, *Evans* vs. *Osgood;* 2 *Mass.* 538, *Pitts* vs. *Temple;* 7 *Conn. R.* 214, *Stow* vs. *Wyse.* The plaintiff must prove affirmatively that the meeting was legal, as in the case of an act in *pais,* on which the validity of a deed depends. 4 *Wheat R.* 77, *Williams* vs. *Peyton's Lessee.* The principle laid down by *Marshall,* C. J., in that case, applies to all instruments of conveyance, a vote as well as a deed.

III. But the present plaintiff produces no evidence of the validity of this vote, except what is contained in the vote itself. The recital by the clerk forms no part of the record. But if its effect is considered, 1st : It was not his duty to do the acts essential to a legal meeting; he is not, therefore, to be presumed to know that they were done; he can certify to his own doings only. It is as if a town clerk should certify that a sheriff had made a legal attachment. 2d. He does not state what had been done that in his opinion made the meeting legal. The return of an officer that he has made legal service, without stating how, is no evidence. 8 *N. H. Rep.* 482, *Huntoon* vs. *Kidder;* 6 *N. H. Rep.* 182, *Cardigan* vs. *Page; Ditto* 194, *Nelson* vs. *Pierce.* He should have stated the acts done, and this tribunal could judge of their

Cobleigh v. Young.

effect. 3d. The validity of the vote depended upon the prior performance of certain acts in *pais*. Had it been his duty to have performed them, his recital in the vote, that he had done so, would not be evidence. 4 *Wheat R.* 77, before cited; 7 *Cowen* 88, *Jackson* vs. *Shepard;* 1 *Tyler* 285, *Powell* vs. *Brown;* 7 *N. H. Rep.* 550, *Morse* vs. *Bellows.* The petition for the meeting, the warrant and notification in the newspapers in which the call was published, if they ever existed, should have been recorded or else placed on file. 4 *Greenl. R.* 508, 511, *Brunswick* vs. *McKean.* See, also, *Greenl. Ev.,* p. 24; 5 *Pick.* 490, *Hathaway* vs. *Clark;* 9 *Cowen* 30, *Bullock* vs. *Koon.* But the meeting was of a recent date, and the objection, that the best evidence is not produced, applies with greater force. And, generally, the failure of proof in a recent transaction warrants the inference that what is not proved never existed. 6 *Greenl. R.* 145, 147, *Battles* vs. *Holley;* 5 *Pick.* 480, *Williams* vs. *Reed;* 2 *N. H. Rep.* 310, *Soc. Prop. Gosp.* vs. *Young;* 2 *Mass.* 538, *Pitts* vs. *Temple;* 3 *Fairf.* 312, *Copp* vs. *Lamb.* To give any force to the naked vote, wholly unsupported by proof, it seems to us would be unwarranted by any sound principle of law, and would reverse the rule that the party who sets up a title must support it by the best evidence of which the nature of the thing is capable, and open a wide door to fraud.

IV. It does not appear that the surveyor was the agent of the plaintiff's grantors in taking possession of this lot. His possession was not constructive. An entry under a deed gives a constructive possession, when the extent and nature of the claim may be known by inspection of the public registry. 2 *Greenl. R.* 275, *Propr's Ken. Purchase* vs. *Laboree & al.;* 3 *N. H. Rep.* 27, *Riley* vs. *Jameson;* 1 *Fairf.* 191, *Farrar* vs. *Eastman;* 12 *N. H. Rep.* 9, *Bailey* vs. *Carleton;* 1 *Cowen* 276, *Jackson* vs. *Woodruff.* It would be very unreasonable to hold that there can be a constructive possession under an instrument that gives no definite information of the extent of the claim. It was, then, a mere entry and survey by a person without title, and without any constructive occupation, and such possession cannot raise a presumption of title. 4 *Mass.* 416, *Propr's Ken. Purchase*

Cobleigh *v.* Young.

vs. *Springer;* 6 *Ohio* 75, *Abram's Lessee* vs. *Will;* 6 *Johns.* 19, *Jackson* vs. *Shearman;* 7 *Johns.* 186, *Jackson* vs. *Vosburgh;* 10 *Johns.* 335, *Jackson* vs. *Niven.*

If they did then obtain a sufficient possession, it was abandoned. 9 *N. H. Rep.* 400, *Straw* vs. *Jones & al.;* 15 *Wend.* 171, *Whitney* vs. *Wright;* 7 *Cowen* 637, 641, *Jackson* vs. *Walker.*

Possession does not prevail except as against a mere wrong doer; and not when, as in this case, there are better evidences of title. 16 *Johns.* 314, *Jackson* vs. *Rightmyre;* 15 *Wend.* 171, *Whitney* vs. *Wright.* The defendant had a prior possession to the plaintiffs, as well a subsequent one.

Possession gives only a presumption of title. The plaintiff himself has destroyed that presumption. He proved the title to have been in the Proprietary, and failed to show that it had passed from the Proprietary to himself. 3 *Ham. Ohio R.* 388, *The Lessee of Ludlow's Heirs* vs. *Barr.*

V. Finally, the plaintiff must recover upon the strength of his own title. He must show a better right than his adversary. His evidence, at most, proves only a *primâ facie* title, which is not better than the defendant's. An unrecorded deed is good between the parties; and if, as in this case, it is found in the hands of the grantee, and he is in possession of the property, this is *primâ facie* evidence of title. 7 *Conn.* 291, *Tingley* vs. *Cutler.*

The plaintiff does not show any entry under a deed of this lot. Admit that the vote and entry *may be* sufficient against a mere wrong doer without color or claim of title, it ought not to go farther. Unless the plaintiff has, upon the whole case, a better title than the defendant, he cannot recover.

*Bell* and *Hibbard,* for the plaintiff. The proprietary have disposed of the land to the plaintiff; that is the plaintiff's case.

Against any one who *does not* claim under the proprietary, the vote itself is sufficient. Against any one who *does* claim under the proprietary, all the proceedings must, perhaps, be shown. 11 *N. H. Rep.* 44, *Atkinson* vs. *Bemis.* But John Young had no color of title. He occupied lot 14, and cleared accidentally on lot 13. It does not appear that he ever claimed any thing in

Cobleigh *v.* Young.

lot 13. His possession was not continued. The defendant is not connected with it.

If the defendant entered under the deed of 1814 to himself, he had not had a possession of twenty years when Atkinson entered. The entry of the surveyor by his direction was sufficient to interrupt any adverse possession of the defendant, if he had any. 2 *N. H. Rep.* 456, *Wendell* vs. *Blanchard*. But, we say, the defendant must, in order to oust the owner, enter under a recorded deed.

Again, we say that the defendant had no adverse possession. He acknowledged the right of Atkinson, and, if he had any possession, thereby surrendered it. A party who has not had twenty years' possession may surrender *by parol*.

PARKER, C. J. The plaintiff shows an entry upon the land in question by a surveyor in 1833, in pursuance of the direction of William Atkinson, and a marking of the boundaries of the lot, and also a conveyance from Atkinson and wife to him. This would be sufficient evidence of possession under color of title, to support an action against one who had entered subsequently without any color of right. 2 *N. H. Rep.* 456, *Wendell* vs. *Blanchard; Woods* vs. *Banks*, [14 *N. H. Rep.* 101.]

It is not clear, however, that this would be sufficient against the defendant. It appears that, prior to this entry, he had occupied the lot to some extent, although it is, perhaps, not conclusively shown that his occupation was under any claim of title. From the evidence respecting his conversation when the lot was surveyed in 1833, it might well be inferred that he made no claim to it, if there was nothing farther in the case. But there is the evidence of a deed from Howard to the defendant, as far back as 1814, and if that deed was executed at the time it bears date, any occupation of the tract by him might well be presumed to be under that conveyance, if there was nothing to rebut such a presumption.

The defendant shows no possession or color of title, farther back than this deed, which can avail him. There is nothing to

indicate that his father ever entered upon the lot under any claim or pretence of title. The case merely finds that he was in possession of the adjoining lot, and cleared over the line. If, however, it had been shown that the father entered claiming title, it would not follow that the subsequent possession of the defendant had any connection with that possession, so as to continue it as an adverse possession. 3 *N. H. Rep.* 49, *Lund* vs. *Parker*.

Assuming then that the defendant entered in 1814, under the deed from Howard, (and waiving any question whether possession under it could be regarded as an adverse possession of the whole lot, because the deed was not recorded,) if the entry by Atkinson in 1833 was under a valid title, the defence must fail; the adverse possession of the defendant, assuming that it existed, being thereby interrupted before it had continued for the full term of twenty years.

The question then arises whether there is sufficient evidence of title in the plaintiff's grantors in 1833, at the time of that entry. Among the evidence produced on the part of the plaintiff is the copy of the record of a vote, purporting to have been passed by the Proprietary, May 15, 1832, granting to Anna Atkinson all the undivided lands within the township. If this vote was regularly passed it is sufficient to convey the land, there being some evidence, which stands uncontradicted, tending to show that this lot had not previously been assigned or conveyed.

The other evidence on the part of the plaintiff serves to show that Josiah Little had an interest in the township, and that this interest passed to Atkinson and wife on the partition of his estate; but, without the vote of 1832, it may well be questioned whether this evidence would go farther than to show a title in Atkinson and wife to some undivided shares or rights in the township; and such a right would not be sufficient to sustain this action.

The vote itself, if it is valid, recognizes the right of Anna Atkinson, as one of the heirs of Josiah Little, to an interest in the township, which is the reason for the passage of the vote, although that perhaps is not material. The objection to the vote is, that it does not appear to have been passed at any legal meeting of the proprietors, and that, in order to make it admissible for the plain-

tiff, as evidence of title, it must be shown that the meeting was duly warned, &c. It has been held in Massachusetts that this is not necessary in the case of ancient proprietary grants. 2 *Mass. R.* 538, *Pitts* vs. *Temple.* And we are of opinion that it is not necessary, in order to make the vote itself evidence, that it should have the credit of antiquity.

It purports to be the act of the proprietors, and it comes apparently duly certified as a true copy from their records. As against them it is good evidence, *primâ facie*, that it was duly passed. They keep records of their proceedings, of which this is a part, and it is but a just presumption as against them that a grant, asserted by their records to have been made at a legal meeting, was made by a meeting duly warned and holden, until the contrary appears.

They ought not to require farther proof of the validity of their own acts than their own records, until they show something to impeach the correctness or validity of the record.

The evidence offered by the plaintiff would, on this principle, be good *primâ facie* evidence against the proprietors, if they were defending this suit, without evidence that the meeting at which they undertook to act was duly called. *Omnia praesumuntur esse rite acta, donec probetur in contrarium.*

Being good against the proprietors, it would seem also to be good against any one who, claiming under them by a subsequent conveyance, would be in privity with them. He could not stand in better situation than his grantors in this respect. And, if it would be good against their grantee by a subsequent conveyance, it must be equally good against any person who shows no conveyance from them. *See* 4 *Pick. R.* 156, *Davis* vs. *Mason.*

The proprietary was, of course, once well seized of this land in fee; and as there is no evidence to show that any division or conveyance was made of it afterwards, until the vote granting all the residue of their lands to Anna Atkinson, the presumption is that the proprietors continued to own up to that time. This is in accordance with the well known maxim of the law, that a state of things being shown to exist is presumed to continue until evidence of the contrary is shown. 1 *Greenl. Ev.*, § 41.

In this case there is no evidence tending to invalidate that presumption. The deed from Howard to the defendant, in 1814, without more, cannot raise a presumption of a grant to him by the proprietary. It does not appear that, prior to that time, Howard had any color of title, or any possession, to warrant such a conveyance. Had the defendant entered under that deed in good faith, claiming the land, and remained in possession for the term of twenty years without interruption, that might have raised a presumption of a grant from the proprietary to Howard or to himself.

No such presumption existing, this case is in fact settled by that of *Atkinson* vs. *Bemis*, 11 *N. H. Rep.* 44. The defendant in that case had a possession which he could sustain against any person who did not show a better title. And the defendant in this, as against any *primâ facie* evidence of title, stands in no better situation than a wrong doer. The mere fact of an entry, under color of a conveyance to him, from one who does not appear to have had either a title or possession which would furnish a decent pretext for making it, cannot place him in any better situation in this respect than he would have been in, had he entered without a deed.

We have no doubt that it was competent for the defendant to impeach the correctness of this record, or to show that the meeting at which it was passed was not organized in such a manner as to render its acts of any validity. But standing on the records uncontradicted, and appearing thus to be the act of the proprietary, the defendant offered nothing having a tendency to impeach it. On the contrary, as we have seen, in 1833, he seems to have spoken as if he understood that Atkinson had title, and there is no evidence that he had any other except that of Little, which was the foundation of this.

Whether one in possession by some informal title, derived from the proprietary previous to 1832, could be ousted without farther evidence that the meeting was legally warned, is a question which we have as yet had no occasion to settle.

*Judgment for the plaintiff.*