# MERRIMACK,

## JULY TERM, A. D. 1852.

---

### Adams v. Stanyan.

Ancient maps of the towns of this State, made by the authority of the legislature, are *primâ facie* evidence of the true lines between the several towns designated on the map, and are competent to be submitted to a jury, as tending to show the lines between the lands of individuals whose lots are bounded by the town lines.

Where maps made more than forty years since, by virtue of an act of the legislature, and purporting to contain accurate surveys of the town lines, were produced in evidence, from the office of the Secretary of State, unaccompanied by the oath of the surveyor who made them—*held,* that they were competent evidence, tending to show the true lines between the towns and the lots bounded by the town lines, without the testimony of the surveyor.

Perambulations of town lines are evidence in controversies between individuals whose lots are bounded by the lines perambulated.

Under the act of February 8th, 1791, town lines could be perambulated by the selectmen of the respective towns, or by such person or persons as they, in writing, should appoint; and where the selectmen of two adjoining towns appointed the same individuals to run the line between them, and nothing appeared to show that the proceedings of the persons. so appointed were not in accordance with the statute—*held,* that their doings might be regarded as a perambulation between the towns.

The records of the proprietors of the town of B., purporting to be made in 1728, containing the proceedings of a meeting at that time, (but it did not appear that there was any notice or call for the meeting, or that it was duly holden ; neither did the records appear to be attested to by any clerk or recording officer, but they were produced by the town clerk of B., who testified that they were delivered to him by his predecessor in office, together with the other records of the town,) are competent evidence to be submitted to a jury as the doings of the meeting.

The declarations of deceased persons, who were so situated as to have the means

of knowledge, and who had no interest to misrepresent, are competent evidence upon a question of boundary, whether the same pertain to public tracts or private rights.

TRESPASS, *quœre clausum*, for cutting and carrying away from the plaintiff's land, in Pembroke, a quantity of wood and timber. Plea, the general issue.

It appeared that the plaintiff owned land in the town of Pembroke, bounded by the line between Pembroke and Chichester, and adjoining land of the defendant. The defendant's land was also bounded by said line between the two towns ; and the principal controversy between the parties was as to the true line between the towns.

To show this the plaintiff offered, among other evidence, a copy of a plan of Chichester, filed in the office of the Secretary of State by virtue of an act of the Legislature passed in 1803, providing for a map of the State to contain accurate descriptions. It was objected that the plan could not be used without evidence from the original surveyor, who, it appeared, was now living in Chichester. The copy was admitted, and the question saved.

The plaintiff also offered a copy of a plan of Pembroke, filed in the Secretary's office in pursuance of said act. On this copy was the following memorandum :

" This plan describes the town of Pembroke by an accurate survey and measurement, agreeable to the act of the legislature.

"Signed, Samuel Noyes, Surveyor."

This copy was specially excepted to on account of this memorandum.

The plaintiff also introduced, subject to exception, the report of a committee to whom the subject of the line between the towns had been referred, by an agreement of the selectmen of Chichester and Pembroke. This report was made in October, 1819, and on the eighth day of December following, the selectmen of the towns went on and perambulated the line, and fixed it in the same place that the committee had established. But it did not appear that the selectmen were authorized by any vote of the town to refer the matter, or that the town, after the report

Adams *v.* Stanyan.

was made, had any action in regard to the same.  It was objected to this report that it could not be binding upon the towns, and especially that it could not be upon these parties, and was not competent evidence in this case.

The plaintiff further introduced, subject to exception, copies of perambulations by the selectmen of said towns in 1819 and 1847.  In both of these perambulations it appeared that the selectmen followed the same line that was run by said committee. It was objected that the defendant, and those under whom he claims, were not parties to any of these proceedings, and therefore, that the evidence was not competent.  The plaintiff further introduced, subject to exception, an ancient book of records of the proprietors of Bow, in which were recorded the proceedings of a meeting of the proprietors and the appointment thereat of a committee to run the line of the town ; also the report of said committee.  These records were objected to, because it did not appear that there was any notification or call for the meeting, or that it was duly holden.  It appeared that these records were not attested by any clerk or recording officer, and they were also objected to on that account.  They were produced in court by the town clerk of Bow, who testified that they were delivered to him by his predecessor in office, together with the other records of the town.

The plaintiff also offered evidence of the statements of a deceased individual, who owned land on both sides of the line, as to a bound upon the line.  It appeared that his land did not join the land in dispute, but was within a mile of it.  This evidence was excepted to, but admitted by the court, subject to the exception.

The jury returned a verdict for the plaintiff, and the defendant moved to set the same aside and for a new trial, for alleged error in the rulings of the court.

*Pierce & Minot,* for the defendant.  1. The copies of the plans of Chichester and Pembroke were improperly admitted. No evidence was offered as to the signatures on the originals, or

the parties by whom they were made. No proof was offered as to their authenticity.

Neither the originals nor the copies were verified by any oath of the parties by whom the originals were made. *Smith* v. *Strong,* 14 Pick. Rep. 128, is directly in point.

And the plan of Chichester would seem to be inadmissible on the further ground of not being the best evidence, the surveyor by whom the original was made being alive, within the jurisdiction of the court, and competent to testify.

The memorandum on the copy of the plan of Pembroke was improperly admitted, being a mere statement *ex parte,* not made by a witness, or under oath.

2. The report of the referees in 1819 was inadmissible. It was not binding on the towns themselves, the selectmen having no authority by statute or from the town to enter into such a reference. And even if it were, it was not evidence between these parties. *Lawrence* v. *Haynes,* 5 N. H. Rep. 33.

And the subsequent perambulations of the town lines being made in pursuance of the report, were equally inadmissible. The reasons on which the decisions in 5 N. H. Rep. 33, above cited, in relation to the admissibility of perambulations in evidence, is based, are entirely inapplicable to this case. These perambulations were made according to the report, without further inquiry.

3. The alleged records of the proprietors of Bow were improperly admitted. Corporation books are evidence of the acts, &c., of the corporation; but it must be made to appear that they are the books of the corporation, kept by the proper officer, or some other person authorized to make the entries, &c. *Highland Turnpike Co.* v. *McKean,* 10 Johns. Rep. 154, and cases there cited.

*Bellows,* (with whom was *Fowler,*) for the plaintiff. 1. As to the maps. No exception was taken to the use of copies, but the exception was that the originals were not competent without being certified by the surveyor.

These maps were made under the authority of the State, and

in pursuance of an express provision of the statute. The maps were to be made containing the exact limits upon an accurate survey, marking all disputed lines, and the map transmitted to the Secretary of State. The purpose was, as expressed in the title, to obtain a map of the State. Laws of 1805, 207.

Maps showing the boundaries of towns and parishes are admissible, if it appear that they have been made by persons having adequate knowledge. 1 Greenl. on Ev. 165. So, acts of the legislature and surveys of commissioners are admissible to show boundaries. 2 Phillips' Ev. 636 ; *Taylor* v. *Roe*, 4 Hawks' Rep. 116.

An ancient map made by commissioners appointed to make partition, may be good evidence to show boundaries, but not title. *Jackson* v. *Beekman & ux.*, 2 Johns. Rep. 180. And a map of a parish made under a private enclosure act, is evidence, if the act be shown. *Rex* v. *Milton*, 1 C. & K. 58.

A map made by a deputy surveyor, in pursuance of instructions from the surveyor general, though the survey was not returned into the office, but was found among the deputy surveyor's papers, who was long since dead, was held to be admissible. *Fothergill* v. *Stover*, 1 Dall. Rep. 6.

In this case, the maps were made under the authority of the towns, in pursuance of a public statute, are preserved among the archives of the State, and are ancient. They are not exceptionable on account of the memoradum, that being nothing more than the ordinary certificate, showing the origin and character of the maps.

2. As to the perambulations. It is held that where the town line and the line between adjoining owners are the same, perambulations are evidence between the owners. *Lawrence* v. *Haynes*, 5 N. H. Rep. 33.

As to the report of the committee. By act of February 8th, 1791, (N. H. Laws, 1805, 195,) it is provided that town lines shall be perambulated once in seven years by the selectmen, or by such person or persons as they shall in writing appoint for that purpose. The selectmen, under this statute, may delegate

their authority to perambulate to others—either one or more ; and we can see no objection to both towns selecting the same person or persons. By necessary implication, as it may be delegated to one person, it may be the same. In fact, that seems the most appropriate exercise of this authority to delegate.

In this case, the selectmen of both towns appointed a committee to run the lines. The appointment was in writing. In fact, as no exception for want of a writing appears in the case, it is to be inferred that the action was regular in that respect. The persons so appointed, run and established the lines, and made a return of their doings, and that return was recorded in the town records. The substance of the whole thing was a perambulation under the authority of the selectmen, and as a perambulation it is competent evidence. So the report of the committee is admissible as traditionary evidence of the boundary of a town, parish, or manor. 1 Greenl. on Ev., 1 Ed. 170, 171, and notes ; 2 Cowen's Phillips, note 477, p. 628, and cases cited.

This report of the committee was admissible—the committee being all dead—as their declaration touching the boundary of the towns. Old leases and old overseers' accounts have been received as evidence of reputation. *Plaxton* v. *Dore*, 10 B. and C. 17 ; and also orders made by justices of the quarter sessions. *Duke of Newcastle* v. *Hamden of Braxtowe*, 4 B. & Adolph. 273.

The committee were in a situation to know, and being dead their declarations are admissible, even within the principle of *Shepard* v. *Thompson*, 4 N. H. Rep. 214.

So in regard to the declarations of persons owning land on each side of the line in dispute. They had no interest to misrepresent, as what was added to one would be taken from the other. Their interest, then, was balanced, and so their testimony admissible, within *Shepherd* v. *Thompson*. See also numerous cases collected in 2 Cowen's Phillips, note 477, p. 628.

As to the proprietors' records of Bow. They were ancient— of the date of 1728. They were found in the place of deposit provided by law. The defendant cannot object that the meeting was not duly called or holden. It has been the constant

practice to admit such records when ancient, otherwise a large proportion of the most authentic evidence we have concerning those early times would be excluded. *Atkinson* v. *Bemis*, 11 N. H. Rep. 22.

EASTMAN, J.  No objection was taken at the trial, to the introduction of the copies of the plans of Chichester and Pembroke, on the ground of their being copies and not originals.  If there had been, and the court had deemed the exception valid, the originals could have readily been produced, the office of the Secretary of State being near the place of trial.  The question, then, which we are to consider, is, were the original plans competent evidence to be used in the case.

The case finds that the principal controversy between the parties related to the true line between the towns, and the maps were introduced as tending to show where that line was.  Both parties were bounded by the line between Pembroke and Chichester, and when that was correctly ascertained, the controversy between them would be decided.  Were the plans competent evidence tending to show the true line between the towns ?

Traditionary reputation in matters of public and general interest, whether the same be oral or documentary, has, as a general rule, been received by courts as competent evidence of the matters to which it relates.  Courts have differed as to the weight that should be given to it, but its competency has been very generally admitted.  This rule has been held to apply to maps showing the boundaries of towns and parishes, if it appears that they were made by persons having the adequate knowledge. 1 Greenl. Ev. § 139, and cases there cited.  And surveys and plans, made in pursuance of acts of Congress and the authority of State legislatures, have also been held to be competent evidence of whatever is contained within their boundaries. *Eberle* v. *Board, &c., of St. Louis Public Schools,* 11 Missouri Rep. 247 ; *May* v. *Baskins,* 12 Sm. & Marshall's Rep. 428 ; *Denn* v. *Pond,* Coxe's Rep. 379; *Dubois* v. *Newman,* 4 Wash. C. C. Rep. 74 ;

*Sproul* v. *Plumstead,* 4 Binney's Rep. 189; *Hewes* v. *McDowell,* 1 Dallas 5; *Doe dem. Taylor* v. *Roe,* 1 Hawks' Rep. 116.

These plans or maps were made by the authority of the State, by virtue of the act of December 30th, 1803. The first section of the act is as follows:

" It shall be the duty of the several towns within this State to cause an accurate survey of the same to be made, and transmit a map thereof to the Secretary of State, on or before the first Wednesday of November, 1805, containing the exact limits of said towns by careful admeasurement, together with a description of all the public roads passing through the same; also, the rivers, falls, and principal streams, ponds, lakes and mountains, and the names of adjoining towns, with the extent said towns adjoin on their own towns; the whole to be protracted by a scale of two hundred rods to an inch on a horizontal line; and all disputed lines shall be distinctly marked."

The second section of the act provides for the manner in which the expense of the surveys and maps shall be met. And the third section enacts as follows:

" That if any town within the State shall neglect to make a survey of the same, according to the directions of this act, or to return a map thereof to the Secretary of this State by the said first Wednesday of November, 1805, such town shall forfeit and pay the sum of one hundred and fifty dollars, to be recovered by an extent from the treasurer for the use of the State." Laws of N. H., (Ed. of 1805,) p. 207.

At the time these maps were made, under the provisions of this act of the legislature, there could have been no dispute in regard to the line between these towns; if so, the maps would have shown it. There was at that time no interest to have them incorrect, and there is no suggestion or reason to suppose they were so. Neither is there any doubt that they were filed in the secretary's office within the time fixed by law, since, had they not been, the towns would have incurred the forfeiture prescribed by the act. They may therefore be denominated ancient maps, according to the legal acceptation of the term ancient, when

applied to instruments more than thirty years of age. They have also become a part of the doings and records of the State, being found in the proper place of deposit, and where the act required them to be—in the archives of the secretary's office; and upon general principles governing evidence of this nature, we think they were properly admitted to go to the jury.

The case of *Smith* v. *Strong*, 14 Pick. Rep. 128, which the counsel for the defendant cites as having a direct and decided bearing upon this question, would seem at first reading, perhaps, to be in conflict with the views above expressed; but upon a careful examination of the case, it will be found, we think, not to be so. In that case, a copy of a plan made in pursuance of a resolution of the State of New York was introduced, in connection with, and as a part of the deposition of the surveyor who made the plan; and it was held admissible. It is true that the learned judge, in delivering the opinion of the court, says, that if the copy had not been thus verified, it would clearly have been incompetent; and so would the original also. But it will be observed that this plan was not made under the laws of Massachusetts, embracing her political divisions, and made for the public interest, but a plan from a neighboring State of a tract of land called the Boston Purchase. It is not intimated in the opinion that the original plan would not have been good in the courts of New York without such verification; and we hardly think that the court could have intended to be understood to hold that a public map, made under the laws of Massachusetts, embracing her political divisions, like those used in this case, could not be evidence without being accompanied by the testimony of the surveyor who made it. If so, many maps and plans, where the surveyors have deceased, must be excluded.

The certificate upon the plan of Pembroke, signed by Noyes, the surveyor, was a mere filing upon the plan, and cannot, we think, be exceptionable. It neither added to or detracted from the map itself, for that purported to be accurate, and to be made by the authority of the legislature.

The next exception which is presented in the case, relates to

the competency of the evidence showing the perambulations. The first evidence upon this point was the report of the committee to whom the subject of the line between the towns had been referred by an agreement of the selectmen of both towns. If this action of the selectmen and committee can be held to be a perambulation, then the evidence was competent. The authority of *Lawrence* v. *Haynes & al.*, 5 N. H. Rep. 33, and the practice under that decision settles the matter. It was held in that case that perambulations are evidence in a controversy between individuals whose lots are bounded by the town lines. In the course of the opinion, *Richardson*, C. J., says : "A single perambulation is evidence. When a particular line has often been perambulated, and the bounds renewed and recognized by the selectmen of both towns, it is strong evidence of its being the true line." And again : " The evidence resulting from the perambulation of the lines between towns is of the same nature as the evidence which results from the acts of the owners of adjoining lands, when they perambulate the lines between their lands, and by agreement renew the marks and monuments." " It can hardly admit of a question that these perambulations are evidence in a controversy between towns as to the lines between them. But are they evidence in a suit between individuals ? We think that they are. The declarations of deceased persons, who had no interest to misrepresent, are evidence of boundaries between the lands of individuals. And it seems to us that these perambulations which are made by men who must be considered as public officers, and are made for public purposes, are entitled to a degree of credit which the declarations of deceased persons can, under no circumstances, claim."

But can the action of the selectmen and committee in 1819 be regarded as a perambulation ? We think it may be. By the act of February 8th, 1791, which was in force at that time, it is provided that the lines between towns shall be perambulated, and the marks and bounds renewed within two years from the passing of the act, and once every seven years forever after, by the selectmen of each town, or by such person or persons as they

shall, in writing, appoint for that purpose; and their proceedings shall be recorded in their respective town books. The act makes further provisions as to the manner of proceeding, which it is unnecessary to quote. Laws of N. H., Ed. 1805, p. 195.

The selectmen of each town could act for themselves, or they could appoint a person or persons to act for them. There is no provision prohibiting each board from appointing the same persons, if they see fit, and so far as it occurs to us, there is no impropriety in it. There is no suggestion made that the individuals selected in this case were not duly appointed in writing, or that their proceedings, after the appointment was made, were not in all respects according to the provisions of the statute. The fact that they were called a committee, or that the matter might at the time be viewed by some in the light of a reference, does not impair the force of their doings, or change their character and effect. If they were duly appointed according to the statute, and followed its provisions in their proceedings, it can make no difference what they were called. Where there is a dispute in regard to a line, and the selectmen of the towns agree upon and appoint individuals to act for them, and they perambulate the line according to the statute, it is in one sense a reference of the dispute, while at the same time it is appointing the individuals to act for the selectmen in perambulating and establishing the line according to the statute. And such, we think, must have been the understanding and intent of the selectmen in these towns, there being no law sanctioning any other course.

The other perambulations are clearly admissible upon the authority of *Lawrence* v. *Haynes.* The fact that they were made upon the line established by the committee, does not impair their validity. They were perambulations, even though we had held the action of the committee invalid; and it was the duty of the selectmen to renew the marks and bounds of that line, if they believed it to be the correct one. The perambulation made in 1847, so long after the transactions of 1819, tends strongly to show the correctness of the line.

The exception taken to the admissibility of the records of the

proprietors of Bow, must also be overruled. Counsel have stated that the records were of the date of 1728. This is not contradicted; and they may, therefore, well be denominated ancient. They were not objected to upon the ground that corporation books, duly kept and authenticated, are not, in general, evidence of what they purport to record. That doctrine is conceded in the argument; but they are excepted to specially, because it did not appear that there was any notification or call for the meeting at which the proceedings in question took place, or that it was duly holden, and because the records did not appear to be attested by any clerk or recording officer.

The proprietors were a corporation. *Colburn* v. *Ellenwood,* 4 N. H. Rep. 99; *Atkinson* v. *Bemis,* 11 N. H. Rep. 44. And the records came from the proper depository, under the oath of the town clerk by whom they were produced; and after such a lapse of time a jury might presume that due notice was given of the meeting, and also that it was regularly held. *Society for Prop. the Gospel* v. *Young,* 2 N. H. Rep. 310; *Cobleigh* v. *Young,* 15 N. H. Rep. 493; *Peterborough* v. *Lancaster,* 14 N. H. Rep. 382; *Tolman* v. *Emerson,* 4 Pick. Rep. 160; *Pitts* v. *Temple,* 2 Mass. Rep. 538.

The fact that they were not attested by any clerk would be a circumstance detracting, perhaps, from their weight, but being of such a remote date, and no suspicious circumstances attending their deposit and production, the want of attestation may be presumed to proceed from the carelessness of the clerk, and should not render them incompetent, as the clerk is dead. In *Sumner* v. *Sebec,* 3 Greenl. Rep. 223, it was held that a book found in the hands of the town clerk, and purporting to be a record of births and marriages in the town, is *primâ facie* evidence of the facts it contains, though it may have no title or certificate, or other attestation of its character.

The question of the admissibility of ancient maps and records to show boundaries, was somewhat discussed in *Gibson* v. *Poor,* 1 Foster's Rep. 440.

The remaining question raised by the case is not alluded to in

the argument, and we presume, therefore, is abandoned. We are aware that the rule held upon the trial in this case is contrary to the English doctrine, and contrary, also, to that which prevails in the courts of some of our States. With us, however, although doubts have sometimes been entertained in regard to it, the question is not an open one. The declarations of deceased persons who were so situated as to have the means of knowledge, and had no interest to misrepresent, are competent evidence upon a question of boundary, whether the same pertain to public tracts or private rights. *Shepard* v. *Thompson*, 4 N. H. Rep. 213 ; *Lawrence* v. *Haynes*, 5 N. H. Rep. 37 ; *Gibson* v. *Poor*, 1 Foster's Rep. 444, and cases there cited.

*Judgment on the verdict.*