| 2 | 369 |
| 67 | 172 |
| 68 | 126 |

## CHESHIRE, MAY TERM, 1821.

## THE PROPRIETORS OF CLAREMONT *vs.* SAMUEL CARLTON.

When lands are described in a deed as bounded on a river, the centre of the stream is to be considered as the boundary.

If an island be situated in the river, and is nearest that bank where the premises lie, it passes to the grantee.

Parol declarations of former owners of the premises are incompetent to contradict this construction of the deed.

But it is competent to show by parol evidence, that the quantity of water was such on each side of the island as to be called by the name of the river; and then as a latent ambiguity it may be explained by other testimony what the parties probably intended by the expression used in the deed.

THIS was a writ of entry to recover a portion of an island in Sugar river, in Claremont.

At the trial here, May term, A. D. 1819, on the general issue, it was admitted, that the demandants were by charter the original grantees of the land in dispute; that lot No. 46, in said town, was bounded south on Sugar river; that this island was on the north side of said river, directly opposite said lot; and that the tenant owns all the land demanded, which originally passed by a conveyance of said lot bounded as aforesaid.

The demandants then offered to prove, that when lot No. 46 was surveyed, the southern monuments of it were erect-

47

ed on the north margin of the river ; that about thirty years since the owner of said lot made no claim to the island, and showed the above monuments as his boundary ; and that the intervening owners, who had been numerous, never claimed the island till a part of this lot became the property of the tenant's grantors, in February, A. D. 1810.

They, also, offered to prove, that this lot in A. D. 1798, was equally divided north and south, and that in A. D. 1810, S. *Fiske*, owner of one half, quitclaimed all his right in this island to one *Steward*, and that in A. D. 1817, *Steward* conveyed it to the tenant, as " an island in Sugar river, " situated between S. *Fiske's* land and *Bill Barnes'* land." The land south of Sugar river and opposite this island was common land, belonging to the proprietors till about eighteen years since, when it was conveyed to said *Barnes*, bounding him to the centre of the south branch of the river ; and that now the tenant owns no land whatever north or south of the river contiguous to the island. About thirty years since, this and other islands were surveyed by the proprietors, and have since been claimed by them, but not cultivated till recently. The quantity of land in the island, or the exact width of the river in this place, did not appear.

All this last testimony was objected to as incompetent, and being excluded by the court, a verdict was taken for the defendant, subject to farther consideration on the points presented.

*J. H. Hubbard* and *Sumner*, for the demandants.

*Upham*, for the tenant.

WOODBURY, J.   The dispute in this case is concerning an island in Sugar river.   The demandants claim it as original proprietors of the town in which the island is situated.   The tenant claims a portion of it as part of lot No. 46 in said town, to which lot he and his immediate grantors have shewn a legal title derived from the demandants.   It is admitted, that said lot was conveyed as bounding south on Sugar river, and that more than half of the water in said river runs on the south side of this island.

The first question is, whether on these facts the island would pass under the deed through which the tenant claims. The general principle on this subject is laid down with much clearness by Sir Matthew Hale, *de jure maris et brachiorum ejusdem*, (p. 5.) " fresh rivers, of what kind soever, " do of common right belong to the owners of the soil ad- " jacent, so that the owners of one side have of common " right the proprietary of the soil, and consequently the " right of fishing *usqua ad filum aquæ* ; and the owners of " the other side the right of soil or ownership and fishing " unto the *filum aquæ* on their side." To the same point, *Vid. Burr.* 2162.—12 *Mod.* 510.—*Holt* 499.—6 *Mass. Rep.* 438, *Storer vs. Freeman.*—14 *ditto* 150.—12 *ditto* 311.—7 *ditto* 498.—6 *John.* 133.—12 *ditto* 255.—17 *ditto* 210, *People vs. Platt.*—3 *Caines* 319, *Palmer vs. Mulliken.*—5 *Hall's Law Journal,* " Batture," *passim.*—*Taylor's Rep.* 136, *Hammond vs. M'Laughlin.*—1 *Maul & Selw.* 656, *arguendo.*

The centre, or thread of the river, being either the centre in respect to the whole quantity of water, or to the whole width of the stream ; and, in either of those views, the centre in this case being south of the island, the title to the island would seem to have passed by the deed under which the tenant claims.

The next inquiry is, whether this principle is of necessity altered, whenever an island is situated in the stream ; and whether in such case the owners of the adjoining land do not of common right own beyond the centre of that part of the stream which runs on their side of the island. The elementary writers lay down no such qualification of the general principle. Nor is any such qualification found in the nature of the case. For the stream as a monument is described as the whole stream and not a part of it. The right to the centre of it is to the centre of the whole stream and not a part of it. Islands, too, are so different in size ; and in some streams so changeable and difficult to fix are their boundaries and location, in consequence of high floods and long droughts,(1) that any attempt to make them an exception from the general principle would be impracticable ;

(1) 5 Wheat. 381.

and, therefore, none has ever been made, unless the parties themselves in a particular case, by their own acts or by an express provision in their conveyances, appear to have intended an exception.

The following authorities seem to imply, that islands constitute no necessary exception to the general principle, and, under that principle, are owned by the person who owns the land on that side of the river to which they are nearest. *Just. Inst. b.* 2, *t.* 1, *s.* 22.—14 *Mass. Rep.* 150, *Lunt vs. Holland.*—5 *Wheat.* 374, *Hardly vs. Anthony.*—2 *Bl. Com.* 261.—*Bracton b.* 2, *ch.* 2.

It remains then to ascertain whether this general principle could in the present case have been controlled or limited by the parol evidence offered on the part of the demandants. We say parol evidence; for the plan and survey are not here as in some states(1) annexed to the deed; or by law made a guide to its construction; and if in this case they had been they would prove nothing in opposition to the inference from the general principle; because the island was so small as not to appear on the plan at all, and the stakes in the survey were doubtless set on the margin of the north branch of the river, as monuments between the lots east and west, and not to limit the lot on the south. 7 *Mass. Rep.* 498, *King vs. King.*—*Taylor* 136.—12 *John.* 252, *Jackson vs. Hathway.*

Again, the declarations of the former owners of lot 46 were not competent in the view with which they were offered as evidence of title in the demandants in contradiction to their deed, through which the tenant claims. Because an unambiguous expression in a deed cannot be contradicted by parol evidence of any kind. And when such declarations are competent, it is when they are offered, *diverso intuitu,* to show the character of a possession, [if title is claimed under it] whether adverse or not, (*Cowp.* 621.—1 *Es. Ca.* 485. —4 *Mass. Rep.* 707.—1 *John.* 159.—4 *ditto* 230.—5 *ditto* 157.—15 *ditto* 237.—16 *ditto* 302) and whether limited by more or less confined boundaries. 2 *D. & E.* 53.—15 *Mass. Rep.* 152.—6 *John.* 21.—13 *ditto* 346.—1 *Caines* 359. But

(1) 4 Wheat. 449.—7 Cra. 34.—9 ditto 173.

here title is claimed under a deed alone, and there has been no adverse possession in any person.

There is, however, one view of the case, in which the testimony might be competent ; and we are disposed to get at the whole merits of the case if possible. The south boundary of the lot is called Sugar river. The identical monument or boundary referred to in a deed is always a subject of parol evidence ; and when disputed, it is always left to the jury to say which was the actual monument intended. Thus there may be two trees of a similar species and with similar marks ; two similar stakes not far distant from each other, or two rivers of the same name ; and which was intended by the deed would be settled by parol evidence, on the ground that it is a latent ambiguity.

In the present case the island may have been of such length and so near the centre as to cause the stream on each side of it singly to be considered and called in common parlance, Sugar river, and not branches or parts of Sugar river. The island, also, may have been so large and of such soil as to be very valuable, and the consideration paid to the demandants may have extended only to the worth of the lot, independent of the island. The lots in that range may have possessed an uniform number of acres, and this one have had its complement without including the island.

These and various other imaginable circumstances, coupled with the declarations and acts of the successive owners, might satisfy a jury, that the parties in the deed, by the phrase " Sugar river," intended only that portion of it on the northern side of the island. *Vid.* 2 *Inst.* 282.—*Phil. Ev.* 419, *and cases cited.*—16 *John.* 23, *Livingston vs. Ten Brock, and cases cited.**

Under this view of the case, we think some of the evidence rejected may have been competent ; and, therefore, order

*A new trial.*

---

* 19 John. 313, Ely vs. Adams.