## GREENLEAF *vs.* KILTON.

Where a deed or grant of land is bounded upon a river not navigable, the boundary line extends to the centre of the stream, including the water, the bed of the river, and all islands, unless there be an express reservation to the contrary.

Evidence may be admitted in some cases to show that the parties affixed a different meaning to the term river, and established an actual line in conformity to such understanding, which might limit their grant.

Any evidence of conflicting occupation or declarations of uncertainty as to the extent of their claim, will have no such effect.

WRIT OF ENTRY, brought to recover a tract of land in Grafton, consisting of two small islands, in the river, near the Low Meadows, so called, in Grafton, containing about three acres.

The plaintiff gave in evidence a deed from John Kilton to Daniel Butterfield, of the demanded premises, dated April 1st, 1830. He also offered in evidence a writ dated April 20, 1830, in favor of the plaintiff and Francis S. Greenleaf against Butterfield, on which writ the demanded premises were attached. Judgment was duly recovered in said suit, and the premises were set off to the plaintiff in part satisfaction of the same.

It appeared in evidence that the main body of the stream in which the islands were situated, ran eastwardly of the islands, leaving the islands on the westerly side of the main stream, or branch of the river. One of the islands was constantly surrounded by water. There was a portion of the year, during the dry season, when the water did not entirely run round the other island. The easterly branch of the stream is about four times larger than the other.

The tenant offered evidence showing that John Kilton originally owned the land on both sides of the river, including the islands; and that, on *the 15th of December*, 1818, he conveyed by deed the land belonging to him on the westerly side of the river, being about thirty acres, to the tenant, describing the same as running north-eastwardly on a certain line to the river, thence *up the river* to the third range, thence up the road to a certain line, thence by various courses and monuments to the first bound mentioned.

It appeared that the islands were within that portion of the river named in the boundaries of the land conveyed in the last named deed, and were either included in, or were opposite to the land granted.

The tenant also offered in evidence a deed from Daniel

Butterfield to the tenant, dated April 17, 1830, conveying a tract of land situated on the easterly side of the river, which deed conveyed land " running westwardly to the bank of the river, thence southwardly along the bank about sixty rods, thence westwardly to the bank of the river, thence northerly on the river ;" which deed was offered as tending to show that Butterfield considered his title to land situated on the easterly side of the river as bounded on the river bank. By this deed, and the deed from John Kilton, above named, the tenant claimed all the land on both sides of the river, including the islands.

The depositions of Amos Kilton and Rufus Williams were offered to show the manner in which the islands had been occupied since the conveyance, and to explain and limit the deeds, if competent to that purpose.

Amos Kilton testified that his father, John Kilton, until his removal from town, in 1829, always improved the islands, and that a few years before he left, he cleared the alders off of the greater part of the lower island. The same witness, however, testified that the tenant, for several years after he bought, improved on the westerly side of the islands, except a part of the lower island, which was not cleared.

Rufus Williams testified to the occupation of the islands by John Kilton and Daniel Butterfield, until they severally left town. Also, that the tenant stated, soon after his purchase of John Kilton, " that his deed covered the islands, but he thought John Kilton would hold them." It was in evidence that he said on another occasion that " he supposed John Kilton honestly owned the great island, but the stream around the small island was so small it could not be called an island." After the tenant bought of Butterfield on the other side of the river, he said " he thought he could then hold the islands, as his deeds were both bounded on the river."

During a part of the time, John Kilton occupied some portion of the main land belonging to the tenant, under what

contract did not appear. The witness thought nothing was paid for it. The land was new and poor.

Verdict was taken for the plaintiff, subject to be set aside and judgment rendered for the defendant, should the court so direct on the above case.

*Smiley, & Bell*, for the plaintiff.

*Bartlett*, for the defendant.

UPHAM, J. In this case both parties claim by conveyance from John Kilton. The deed from John Kilton to the tenant is the older deed, and the land conveyed is described as *being about thirty acres, beginning at a given monument*, and running certain courses and distances "north-eastwardly to the river; thence *up the river* to the third range;" thence up the road to a certain line; thence by various courses to the bound began at.

This description clearly bounds the party upon the river, and such boundary, above tide water, uniformly passes the title to the middle of the stream, including the water, the bed of the river, and all islands, unless there be an express reservation, or an immemorial usage to the contrary. 2 *Hil. Ab.* 126 ; 3 *Kent's Com.* 428 ; *King* vs. *Smith, Doug.* 441 ; 2 *N. H. Rep.* 369, *Claremont* vs. *Carlton.*

The islands in controversy are situated nearest the bank of the river where the premises conveyed to the tenant lie, and the title in the islands passed to the tenant by the ordinary legal effect of the grant, unless they are brought within some exception to the general rule.

It is contended that the title in the islands did not pass, for the reasons that such was not the intention of the parties, and that a location of the land was made not including them. Evidence to control the deed to this extent is admissible only on the ground of a latent ambiguity in the deed. The only ambiguity alleged is an uncertainty involved in the meaning

of the term river. But the meaning of this term is well settled and defined.

The plaintiff, however, contends that where the parties give, at the time, an actual construction to the term, limiting it to the margin of the river, it either shows such an ambiguity in the use of the term as will leave it open to explanation, or the court will limit the grant to such boundary, on the ground of an agreed line mutually established under the deed.

But the evidence in our opinion does not sustain either point taken. The possession of the islands was conflicting and uncertain, and shows no definite construction of the parties as to the bounds of the grant.

For several years after his purchase, the tenant improved the westerly side of the islands, except that part of the lower island which was not cleared. John Kilton, a few years before leaving town, in 1829, cleared the alders from part of the lower island; he also occupied a part of the main land belonging to the tenant, but on what contract did not appear. It would seem probable the whole might have been permitted under some license from the tenant. There is clearly nothing in the evidence showing an agreed, or an acknowledged line between the parties, or that the occupation was designed, or recognized by them as the limit of the grant. For some eight years past the occupation has been wholly by the tenant.

The declarations of the tenant show no agreed line, but a conflicting claim. He said that his deed covered the islands, but, at the same time, according to the statement of the witness, that he thought John Kilton would hold them. He also said, on another occasion, that he thought John Kilton honestly owned the great island, but the stream around the small island was so small it could not be called an island; and afterwards, on acquiring title on the opposite side of the river, that he thought he could then hold the islands, as his deeds were both bounded on the river.

These declarations show no agreed location of the land or a relinquishment of his claim. They merely show a collision and uncertainty as to the legal extent of the grant on which the parties rested their claim, and which, through inability to agree among themselves, is ultimately submitted to us.

Under such evidence our opinion is that the boundary fixed under the settled legal construction of the term, river—must remain as the true boundary betwixt these parties, and that the islands, for aught that now appears, passed by the deed from Kilton to the tenant.

The verdict must, therefore, agreeably to the conditions on which the case is drawn, be set aside, and

*Judgment entered for the tenant.*