# ROCKINGHAM,

## DECEMBER TERM, A. D. 1846.

## Dow *v.* Jewell & a.

Admissions by one in possession, in disparagement of his title, and giving a character to his possession, are competent evidence to show the true nature of his title and possession, against his grantees, claiming under a subsequent conveyance.

Where land is purchased for two or more, with their money, and the conveyance is made to one of the parties, there is a resulting trust raised in favor of the others.

A bill in equity alleging that Jonathan Jewell laid out money belonging to himself and Jacob and Sally Jewell, in the purchase of land for their common use, benefit and advantage; and an agreement and understanding that Jonathan and Jacob should be owners in fee and tenants in common, each of a moiety, and that Sally should have her wood from the land, and that a deed was taken to Jonathan; is a sufficient allegation of such a purchase as to raise a trust.

On such an allegation it appears that Sally may have an interest in the trust, and she should be made a party to a bill by the heirs of Jacob, or any one claiming under them, to establish a trust in their favor against Jonathan, or his grantee; as she is entitled to allege and show, if she may, that her interest was to the extent to which her money was used.

On the questions whether the use of her money, in such case, would alone be sufficient to show a trust for her, to the extent of the money thus used, or whether parol evidence could be received to show an agreement by her that she was to have such wood as she needed, and thus to create a trust to that extent; or whether, such evidence being excluded, the result would be that the use of her money created a debt in her favor; she is entitled to be heard.

In general, a valid partition of land cannot be made by parol, such case being within the statute of frauds. But a parol partition may be made of lands held under a trust arising by implication of law.

Dow *v.* Jewell.

A parol partition, valid as between those who were parties to it, may be ratified by others interested in the land.

A deed of a married woman, to which her husband is not a party, of land not held as her separate property, is invalid.

When it appears upon the face of a deed that there has been a material alteration made in it, in the absence of proof to the contrary it is presumed, *prima facie*, to have been made after the deed was executed; and the burden of proof is on those claiming under the deed, to rebut the presumption.

Whether, if the deed purports to convey two separate parcels of land, and a material alteration in the description of one only has been made since its execution, it will avoid her deed entirely, or only so far as relates to that tract of land, *quære ?*

The filling of a blank, which appears to have been originally left in the description of the land conveyed by a deed, and to have been subsequently filled, is presumed to have been made before the deed was executed, in the absence of proof to the contrary, as the deed would not be perfect until the blank was filled.

A description in a deed, " One and one half acres, more or less, and adjoining land of R. D. and others, being the Burnt swamp land, so called," is sufficient to let in evidence to show what land the grantors owned in Burnt swamp, adjoining land of R. D.

Lapse of time is not a bar to relief for the enforcement of a resulting trust, where there has been an acknowledgment of the trust, and no adverse possession, and no laches.

The principle which protects a *bonâ fide* purchaser without notice, so that he can hold the land discharged from equities which would affect his grantor, does not apply to a case where the consideration, or a material part of it, is an agreement by the grantee that he will support the grantor and his wife during their lives.

Amendments to bills in equity are not, in general, allowed when the parties are at issue, and witnesses have been examined. An amendment making new parties is an exception. New averments should be introduced by a supplemental bill.

In Equity. The bill stated that Jacob, Jonathan, and Sally Jewell sold a piece of land situated at Bugsmouth Hill woods, in South-Hampton, which descended to them from their father; that Jonathan received the consideration, and laid the same out in the purchase of a piece of wood-land of Robert Rogers, situate in Burnt swamp, in

East-Kingston, for their common use, benefit and advantage; Jonathan and Jacob to be owners in fee and tenants in common, each of a moiety, and Sally to have her wood from the land during her life, the deed being taken to said Jonathan, but not recorded; that Jonathan and Jacob occupied and improved, as tenants in common, during the life of Jacob, each taking from the land what wood and trees he wanted, without any account, and that Jacob, frequently, while so taking wood, asserted that he owned one half; that Jacob, on the 14th of September, 1824, purchased certain pieces of saltmarsh, situate in Salisbury, Massachusetts, and took a deed to himself, and that he died in June, 1825, intestate, leaving Dorothy, Barnard, Jacob, Susan, Alfred, James, Eliza and Joseph, his children and heirs-at-law; that about twelve or fourteen years since, Jonathan Jewell called on Barnard Jewell, who was administrator of his father's estate, and on his brother Jacob, and said he wanted a division of the land in Burnt swamp between him and the heirs of Jacob; that a time was appointed, and Jonathan and his son Richard, on the one part, and said Barnard and Jacob on the other, made a division, cast lots, and the part which fell to the heirs of Jacob was accepted, and occupied by them, or by Alfred Jewell, one of them; that about the 11th of January, 1838, the real estate of Jacob Jewell, deceased, was divided among his heirs, by a committee duly constituted by them for the purpose, and the heirs accepted the same, and have ever since occupied according to the division, in which the land in Burnt swamp was set off to Alfred Jewell, and he occupied it, and December 27, 1841, conveyed to the plaintiff with warranty, who has since occupied it; that Eliza Jewell and her husband, Robert Chase, conveyed her share in her father's estate to her brothers, Barnard and Jacob, May 9, 1837, and that Dorothy, Barnard, Jacob, Susan, Joseph and James, for the purpose of carrying the division into effect, conveyed all their interest in the wood-land to Alfred, September 9, 1842.

It further stated, that after the division of the Burnt swamp wood-land between Jonathan and the heirs of Jacob, as aforesaid, the former came to Barnard Jewell and said he owned one half of the pieces of saltmarsh, and was entitled to a deed from the heirs, and that the heirs owned one half of the wood-land, and were entitled to a deed from him, and if they would give him a deed of one half of the saltmarsh, he would give them a deed of one half of the woodland; that the heirs agreed to this, and Jonathan procured a deed to be made of half the saltmarsh, which was executed by the heirs, or a portion of them, which he took, and said if they would procure a deed to be made of the woodland, he would execute it; that Alfred, afterwards, about February, 1842, informed Jonathan that he was the owner of the woodland, and requested a deed, which Jonathan refused to give.

The bill then charged that the defendant, Jonathan, in March, 1840, conveyed the whole of the woodland and half the saltmarsh, with other parcels of real estate, without any money consideration, to his sons, Charles, George, and John C., Richard (who has since deceased, leaving his father heir-at-law), his grandson, Munroe G. J. Tuxbury, and his grand-daughter, Mary A. Webster, who are the other defendants; that the deed was made in consideration of a bond executed by said Charles, George, John C. and Richard, and by William Tuxbury, to maintain and support said Jonathan and his wife during their lives, and was upon the condition that they should perform the condition of the bond; that Munroe G. J. Tuxbury, August 20, 1842, commenced an action against the plaintiff, to recover one eighth of the land.

Prayer for a decree that that the defendants convey to the plaintiff all their interest in the land so conveyed to him by Alfred Jewell, and that Tuxbury be restrained from further prosecuting his suit, &c.

Jonathan Jewell, in his answer, denied that Joseph Jewell, the father of said Jonathan, Jacob and Sally, owned in fee simple, as charged in the bill, the five acres of land at Bugsmouth Hill woods, but alleged that Jonathan Jewell, Sr., the father of Joseph, was formerly sole owner thereof, and that on his death Joseph became seized of one third, subject to the widow's right of dower; that on the death of Joseph this third descended to said Jonathan, Jacob and Sally. He alleged that the sale of this five acres was by all the persons interested in it, and admitted that he received the money upon the sale, but averred that he had long since accounted to Jacob and Sally, and to all others interested therein.

He admitted that he purchased a tract of land in the Burnt swamp of Robert Rogers, as set forth in the bill, and that the land conveyed by Alfred Jewell to the plaintiff is part of it, but denied that he laid out the money, or any part of it, for which the five acres in Bugsmouth Hill woods was sold in the purchase of the land in Burnt swamp, and averred that he purchased this land for his own sole benefit, and not under any understanding or agreement that any other person should derive any benefit from the purchase. And he alleged, that although it was true that he received the price and consideration for which the five acres were sold, and although the money paid by him for the Burnt swamp land may have been the same money, yet that it was not paid for said Jacob and Sally, or either of them, in whole or in part, or upon their account, but that upon the receipt of it he became their debtor for their shares, and had since accounted to them, and that he had no conversation in relation to any persons becoming interested with him in that purchase.

He denied that he and Jacob occupied the land in Burnt swamp together, as tenants in common, in the manner alleged in the bill, and said that although Jacob may have cut wood from the land with his assent — and he did not

know that either ever called upon the other to account for any thing taken from the land, yet he had no knowledge or belief that Jacob ever asserted that he owned half of it.

He alleged that Jacob and himself were tenants in common of certain other real estate, some of which had descended to, and other portions of which had been purchased by, them; and that on the 3d day of April, 1794, they came to an arrangement to divide all they thus owned, and made deeds to each other, but continued to occupy as before, until May 29, 1821, a few years before the death of Jacob, when the deeds were delivered, after which each occupied his part in severalty, except the pastures; and he averred that Jacob had not cut wood upon the land in question since that time.

He alleged that Jacob and himself agreed to purchase the saltmarsh together, one half to be conveyed to each of them; that he paid to Jacob one half of the price; that a conveyance of it was made to Jacob, and a deed from Jacob to him of one half was prepared for execution, and it was agreed that these deeds should remain in the hands of one Brown, until Jacob should execute this last deed, which he did not do in his lifetime, and that he believed George Jewell, another of the defendants, after the death of Jacob, procured those papers and obtained a deed of half of the saltmarsh, from five of the heirs of Jacob to him, but that he had no knowledge or agency in obtaining it until it was brought to him by George.

He denied that he had said that the heirs of Jacob were entitled to one half of the land in Burnt swamp, or that he ever called on them for a division of that land, or said that if they would give him a deed of half the saltmarsh he would give them a deed of half of that land; but he said that about fourteen years since, after he had become aged, and in a great degree incapable of the transaction of business, and had given up the charge thereof to others,

his son Richard, since deceased, was requested by said Barnard and Jacob, and prevailed upon, in company with them, to go upon said land and cause a line to be drawn and marked, dividing it, and to cast lots with them for the parts thereof, and that the part which fell to the heirs of Jacob, Sr., is the same described in the deed from Alfred Jewell to the plaintiff. And he denied that he had any agency therein, or that any partition was made, or any conveyance or release executed, or any thing further done towards effecting a partition of the land, or that he assented or agreed to any thing in relation thereto, or ever agreed to convey the land, or any part of it, according to that supposed partition, or otherwise, and said he did not know that the heirs of Jacob ever occupied either part of the land ; that he had always protested against the partition, and the validity of the claim of the heirs of Jacob.

He admitted that some of the mutual friends of the heirs of Jacob had reported or recommended a division of his estate among the heirs, and that, according to the division thus reported, the land in question would have fallen to the share of Alfred, but alleged his belief that no legal partition had ever been made.

· He alleged that he was induced to make the conveyance to the other defendants, and they to accept it, by reason of his increasing infirmities, and consequent incapacity to manage his property ; that a good and valuable consideration was paid, as is set forth in the bond given to him by the other defendants; and that in performance of the condition they had paid a large sum for his benefit, and to extinguish his liabilities, and have ever since maintained him and his wife.

He further alleged that on the 19th day of January, 1821, he and his brother Jacob held a meeting for the express purpose of examining and adjusting all unsettled claims and business between them, and then revised the

Dow v. Jewell.

whole course of the business in which they had been jointly interested; that each produced his claims against the other, as well for money received as for other things, and struck a balance, by which there was found due to Jacob $11.08, for which he gave his promissory note, which has since been paid.

He denied that the heirs of Jacob or the plaintiff had ever applied for a deed before the filing of the bill; denied that there was any trust estate, but alleged that if there had been any such, the interest of Jacob in the land would have now been owned, seven eighths by the heirs of Jacob, who are not made parties to the bill, and only one eighth (being one sixteenth of the whole land) by the plaintiff.

And he set forth and claimed the benefit of that portion of the statute of frauds requiring the assignment of all interests of freehold, &c., and all declarations and creations of trust in any land, &c. (except trusts which arise by implication or construction of law), to be proved by some writing signed by the party, &c.

The answers of the other defendants contained allegations in substance similar to those in the answer of Jonathan Jewell; averred their belief that Jonathan had fully accounted for the money received on the sale of the land at Bugsmouth Hill woods; alleged that they purchased, for a valuable consideration, as set forth in his answer, and without any notice of the pretended title of the plaintiff, or of the heirs of Jacob, and claimed the benefit of the statute.

The substance of the evidence taken in the case, so far as it is material, is stated in the opinion of the court.

*Emery*, for the plaintiff, cited 11 N. H. Rep. 501, *Hollister* v. *Barkley;* 1 Smith's Ch. Pr. 340; 2 Story's Eq. 243; Lewin on Trusts 168, 169; Fonblanque Eq. 421, and n.; Willis on Trustees 55; 4 N. H. Rep. 397, *Pritchard* v.

Dow *v.* Jewell.

*Brown;* 8 N. H. Rep. 186, *Page* v. *Page;* 6 Cowen 706, *Jackson* v. *Moore;* 3 Mason 360, *Powell* v. *M. & B. Manf. Co.;* 1 Johns. Ch. 582, *Boyd* v. *McLean;* 2 id. 405, *Botsford* v. *Burr;* 3 N. H. Rep. 170, *Scoby* v. *Blanchard;* 2 Sumner 487, *Flagg* v. *Mann;* 6 Paige 355, *Sweet* v. *Jacocks;* 1 Russ. & M. 53, *Lees* v. *Nuttall*, S. C.; 1 Tamlyn 382; 3 Sumner 476, *Baker* v. *Whiting;* 2 Paige 406, *Howland* v. *Scott;* 1 id. 147, *Brown* v. *Lynch;* 3 Russ. 583, *Goodson* v. *Ellison;* 3 Ves. 126, *Philips* v. *Brydges;* 4 Pick. 71, *Arms* v. *Ashley;* 5 N. H. Rep. 181, *Haddock* v. *Wilmarth;* 11 id. 460, *Smith* v. *Smith;* 1 Smith Lead. Cas. 4; 9 N. H. Rep. 337, *Marston* v. *Brackett.*

*James Bell,* for the defendants, cited 1 Hil. Real Property 210, n., citing *Kisler* v. *Kisler*, 2 Watts 324; *Pitts* v. *Waugh*, 4 Mass. 424; *White* v. *Carpenter*, 2 Paige 241; *Bartlett* v. *Pickersgill*, 4 East 577, n.; Sugden on Vendors 447; Story's Eq. Pl. 74, 152, 189; Coop. Eq. Pl. 55; *Guest* v. *Homfray*, 5 Ves. 818; *Harrington* v. *Wheeler*, 4 Ves. 686; *Gregory* v. *Gregory*, Cowp. 202; S. C., 1 Jac. 631; *Blennerhassett* v. *Day*, 2 B. & Beatty 118; *Jeffers* v. *Radcliff*, 10 N. H. Rep. 242; *Ireland* v. *Rittle*, 1 Atk. 542; *Thomas* v. *Gyles*, 2 Vern. 232; *Jackson* v. *Harder*, 4 Johns. 212; Mitf. Eq. Pl. 174; Edwards on Parties, ch. 17; *Penfield* v. *Newman*, 5 Sim. 405; *Tilton* v. *Tilton*, 9 N. H. Rep. 385.

PARKER, C. J.  The plaintiff's case is, that the tract of land in Burnt swamp, of which he now claims one half, divided and severed, was purchased with the money of Jonathan, Jacob and Sally Jewell. He states a sale of land at Bugsmouth Hill woods, belonging to them as heirs of Joseph Jewell, and that the proceeds of that sale were invested in the purchase of the tract in Burnt swamp.

The answer of Jonathan Jewell attempts to show that

Joseph Jewell owned only one third of the Bugsmouth Hill land; that all who were interested joined in the sale, and that although the money received upon the sale may have gone into the purchase of the land in question, Jacob and Sally had no interest in it, he having accounted to them. But however the ownership of the land sold may have been, there is no evidence to prove that the money of any persons except Jonathan, Jacob and Sally Jewell was used in the purchase of the land in question. There is nothing to show that any of the other persons named ever claimed an interest in the land in Burnt swamp.

The attempt on the part of Jonathan Jewell to show that notwithstanding the money of Jacob and Sally received on that sale was used in making this purchase, yet that the purchase was for himself, and that he thereupon became indebted to the others, fails altogther.

He does not allege that it was so agreed. He alleges a settlement of accounts with Jacob in 1821, but does not allege that this money was included in that settlement, and no proof is offered that any such settlement was ever made.

His answer, although evasive, tends very strongly to prove that the money of Jacob and Sally was in fact used by him in making the purchase, and that Jacob, at least, had some interest in the land.

The answers of the other defendants, who come in upon his subsequent conveyance, deny the purchase in trust, but they do not appear to have had any knowledge except what they may have derived from him, and from the fact of the division.

From the evidence it appears that Jonathan, during the time he held the title, admitted that Jacob owned half, and that Sally had a right to have her wood from it. It proves also that he applied to two of the heirs of Jacob to have a division made, and that he was present in making one, and putting up the monuments.

One of his sons, Richard, since dead, is shown to have been present, aiding in that partition, and Jonathan, in his deposition, taken to be used in the suit at law, and now used against him to show his admissions, says his boys and Jacob's wanted the land divided.

There is further evidence that he proposed to give a deed of the part thus divided off to the heirs of Jacob, upon receiving a deed of one half of the saltmarsh, of which Jacob held the title, and it appears that George, another son, and one of the defendants, was present at that time.

The evidence of his admissions, made in disparagement of his title, and giving a character to his possession at the time he held the title, is competent to show the true nature of his title and possession, against the other defendants, who claim under him. 2 N. H. Rep. 372, *Proprietors of Claremont* v. *Carlton ;* id. 387, *Adams* v. *French ;* 15 N. H. Rep. 563, *Smith* v. *Powers*, and authorities cited.

There is also evidence of acts of ownership by Jacob, in his lifetime. And the evidence that Jonathan and Jacob held other lands in common might tend to strengthen the case.

Upon the first point, then, the evidence is quite sufficient to overcome the answers, and to establish the fact that the money of Jacob was used in making the purchase, in a manner to constitute a resulting trust in his favor, to some extent, because it was understood and agreed that the purchase was to be made with his money, for his benefit.

It has been objected that the allegation in the bill on this point is not sufficient; but the bill states that Jonathan laid out the money of the three, for their common use, benefit and advantage, under an agreement and understanding that Jonathan and Jacob were to be owners in fee and tenants in common, each of a moiety, and that Sally was to have her wood from the land during her

life, and that a deed was taken to Jonathan. This is a sufficient allegation of such a purchase as to raise a trust. The extent of the trust, for the benefit of those interested, remains to be considered.

There is some evidence tending to show that other money, beyond the money received for the sale of the Bugsmouth Hill land, may have been furnished by Jonathan, or Jacob, or both, and used in making the purchase, but this is not alleged on either side, and the evidence is quite too slight and uncertain.

The money of Sally, having been used in making the purchase, which was to be to some extent for her use and benefit, the defendants object that she ought to be made a party, and it is clear that she has, or may have, an interest in the subject matter of the suit. The argument for the plaintiff assumes that she has no interest except to have her wood from the land, but that is the very question first to be settled.

She is entitled to allege and show, by other proofs than those already in the case, that, by the actual agreement in pursuance of which the purchase was made, she was to be equally interested with her brothers in the title. If no affirmative evidence of that character exists, she may, upon the case as it now stands, contend, as the defendants have done, that parol evidence cannot be introduced to prove that her interest was other than an equal interest, according to the proportion of the money advanced by her in making the purchase, she being interested in that purchase.

If the operation of the purchase was to raise a resulting trust for her, to the extent of one third of the land, then the division between Jonathan and the heirs of Jacob, even if there were no other objection to it, must fail for that reason, not having been made among all those interested, and there would be an end of the plaintiff's case. But the exclusion of unwritten evidence to establish and

Dow *v.* Jewell.

limit a trust for her to take wood alone, may not necessasarily result in showing that she has an interest in the land. Should the evidence, upon her being brought in as a party, tend to show, as it now does, that in point of fact there was a verbal agreement, by which, in consideration of the money advanced by her, she was to have her wood from the land during her life, and should it be found in point of law, no trust of that character could be set up as resulting from the use of her money in making the purchase, for the want of evidence in writing to establish and limit a trust of that character, a question may still arise, whether the exclusion of the proof of such verbal contract, for the purpose of raising a trust, will result in giving her a trust estate in one third of the land, because her money was used to that extent, or will exclude her from any interest, on the ground that the proof that she was to have an interest in the purchase, by the agreement of the parties being excluded, the fact alone that her money was used by the others would only create a debt in her favor against them, and enable her to recover the amount of them in a personal action for that purpose. In other words, there may be a question whether, if the proof of the verbal contract be excluded, there is any evidence to show that she was to have any interest, or upon which she can be regarded as a purchaser, so as to raise a trust. 2 Paige's Ch. 238–242, 265, *White* v. *Carpenter.*

Assuming, as the bill avers, that by the agreement the purchase was to be made for the benefit of Sally, so far that she was to have a right to take wood from the land during her life, and that there was a valid trust to that extent for her benefit, she is still entitled to be heard upon the question whether the division or partition attempted to be established in this case, and to which she does not appear to have been a party, may be to her prejudice, and whether any thing is necessary to be done to secure her rights.

In any view of the case, therefore, the court ought not to proceed to a decree, unless she is in some way made a party.

But there are other questions in the case, relating to the partition and subsequent proceedings, which seem to be immaterial to the interests of Sally Jewell; and as it cannot be to her prejudice, and may conduce to the interests of the parties at present before us, we have proceeded to consider the effect of the alleged partition and subsequent proceedings upon those who were parties to them, so far as they are before us.

By the common law, tenants in common might make partition by parol, if it were accompanied with livery of seizin in severalty; Co. Litt. 170, a; 2 Cruise Dig. 561; and parceners might make partition by parol, generally. Livery seems not to have been required. 2 Cruise 542. Such partitions would bind those who claimed under them.

It is held in England, however, that the law in these particulars has been changed by the statute of frauds. Rob. on Frauds 285. And so is the doctrine in Massachusetts. 5 Mass. 235, *Porter* v. *Perkins*. But in New-York there are several cases in which it has been held that parol partition, by tenants in common, carried into effect by possession, is binding. 4 Johns. 202, *Jackson* v. *Harder;* 9 Johns. 270, *Jackson* v. *Vosburgh;* 7 Wend. 141, *Jackson* v. *Livingston;* 14 Wend. 625, *Corbin* v. *Jackson;* 25 Wend. 436, *Ryerss* v. *Wheeler*. The leading case is *Jackson* v. *Harder*, 4 Johns. 202, although that professes to be founded upon a prior decision. 2 Caines 169, *Jackson* v. *Brady*. But in the case in Caines there had been a deed recognizing the partition.

In none of these cases is there any reference to the statute of frauds. Whether the statute of New-York is not in terms like the English statute, or for what other reason a different rule is held there from that prevailing elsewhere, we need not inquire.

Holding as we do, in accordance with the decisions in England and Massachusetts, that as a general rule a valid partition of lands held by tenants in common cannot be made by parol, because of the statute, we are of opinion that this case is not within the provisions of the statute, and that the partition therefore is valid, provided Sally Jewell had no interest to be affected by it.

This is a case where the property was held by a trust arising by implication of law, and in its original inception the trust is within the express exception of the statute. No instrument in writing is necessary in order to create the trust estate, or show the right of the *cestui que trust.* And if the existence of the trust estate may be shown by parol, because the case is not affected by the statute, and the trust may be enforced without writing, because never within the statute, we see no good reason for holding that the estate is within the statute in other respects. So long as it exists as a trust, thus raised by implication of law, it exists with all the incidents attached to such an estate before the statute, because of the exception. And one of those incidents, as we have seen, is that partition may be made by parol. It would present a singular state of the law were we to hold that the creation and continued existence of the estate and title might be shown without any written declaration of the trust, but that a division of the property among those who thus held it must be proved by writing; thus requiring a higher degree of evidence to show the partition of the property, than was required to show the existence of the title to it. Besides, in England, although in general partition among tenants in common must be in writing since the statute, chancery will in some instances confirm a parol partition which has been executed, and possession taken accordingly, even in cases which do not involve a trust. Thus it has been held that partition between tenants in tail, though only by parol, shall bind the issue. 1 Vern. 233, *Thomas* v. *Gyles.* And

in *Ireland* v. *Rittle*, 1 Atk. 541, the Lord Chancellor said, " when there had been a long possession under an agreement for severalty of partition, this court is strongly inclined to quiet the enjoyment of such estates."

A release to Jonathan Jewell was in no way necessary to the validity of the partition. He held the legal title to the whole. On partition he did not need any thing more than the partition itself to confirm his title to the part he took in severalty.

But here we come to another point. Only two of the heirs of Jacob Jewell, Barnard and Jacob, Jr., were parties to this partition when it was made. It was competent for the rest to have dissented. But it was also in their power to ratify it. 13 Johns. 367, *Jackson* v. *Richtmeyer*.

And upon the partition of Jacob's estate among the heirs, this was treated as a part of his estate, and set off to Alfred ; and, with one exception, all the interest of the other heirs in the tract has been conveyed to Alfred since his conveyance to the plaintiff, if their deed be valid.

Assuming the validity of the deed, those who lawfully executed it must be held to have ratified the partition, from the fact that this was assigned to Alfred as part of his share, that the others of course have other lands of the intestate, and in consequence of that have released this. They cannot say now that this was an invalid partition, and the title of Alfred invalid for that reason.

So far as they have ratified the partition and conveyed their interest, it is not necessary that they should be made parties.

But one of the heirs, Susan Merrill, has not executed the deed to Alfred in a manner to bind her. She has signed it by her maiden name, Susan Jewell, and her husband is not a party to it.

It was suggested, upon the argument, that a stranger

cannot take the objection that she is married; but the defendants may object that the plaintiff does not show title to the land in question, or to a portion of it. Perhaps her confirmation now may make it good. See 1 Atk. 543.

We come next to an objection which has been taken to the deed to Alfred Jewell, on account of an alteration in it. There is an alteration apparent upon the face of the deed, but it relates to another tract of land described in it. There appears, also, to have been a blank in the description of the land now in question, which has been filled.

We have held, in relation to a promissory note, that an alteration of the date is presumed to have been made after its execution, and the burden of proof to show the fact to be otherwise is upon the holder. 11 N. H. Rep. 395, *Hills* v. *Barnes.*

The same reason exists for presuming that a material alteration in a deed was made after its execution, and for holding the grantee, and those who claim under him, to show the fact to be otherwise. 2 Wend. 555, *Jackson* v. *Osborn.*

We cannot find, upon inspection of this deed, that the alteration was made before the execution of it, nor does the mere formal proof of the execution of the deed establish that fact.

Whether this alteration, being in the description of another parcel of land, may be regarded as an immaterial alteration, so far as the title to the land now in question is concerned, or whether, if shown affirmatively to have been made by the grantee, with a fraudulent intent, it would avoid the whole deed, so that it could not be given in evidence, even to show title to the land the description of which is not affected by the alteration, are questions which we leave for further consideration, should the case hereafter require their decision. 1 N. H. Rep. 145, *Chesley*

v. *Frost;* 2 Hill. Abr. 414–416, and authorities cited; 22 Wend. 388, 393, *Herrick* v. *Malin.* If the alteration may be regarded as immaterial so far as this suit is concerned, it cannot, for the purposes of this suit, be presumed to have been fraudulently made by the grantee.

The filling of the blank, which appears to have been originally left in the description of this land, may well be presumed to have been made before the execution of the deed, there being no evidence to the contrary. Such would be the natural course, as the description would not be perfect until the blank was filled.

Another objection to the deed is on account of the description of this property, " one and a half acres, more or less, and adjoining land of Rufus Dow and others, being the Burnt swamp land, so called." This is quite loose enough, but it may be understood to refer to the part of the land in Burnt swamp, which, on the parol partition, fell to the grantors. There is no evidence that they had any other land in Burnt swamp, and the maxim, " *Id certum est,*" *&c.*, may well apply.

The parol partition being sufficient, the objection that it was not competent for the grantors in that deed, or for Alfred Jewell, to convey a specific portion of the land by metes and bounds, fails of course.

The defendants object that the plaintiff cannot avail himself of any contract by Jonathan Jewell to convey the land in question to the heirs of Jacob, if they would convey to him one half of the saltmarsh. But we do not understand that he seeks to sustain his bill upon the ground that he is entitled to a specific performance of any contract of that character. The evidence to that effect is well used along with the other evidence to show the trust and the partition.

The reliance of the defendants upon the lapse of time as a bar to the relief sought, cannot avail them. In the cases referred to relief was refused on the ground of

laches; but in this case there is evidence of a distinct · acknowledgment of the trust by Jonathan, a joint occupation, a subsequent partition between Jonathan and the heirs of Jacob, a division of Jacob's estate among the heirs in which this was included, and a conveyance of the land to the plaintiff by the heir to whom it was set off on that division. It was not laches in Jacob to let the matter lie in trust so long as Jonathan acknowledged the trust and permitted him to cut wood upon the land. There can be no disseizin of a trust (3 Sumn. 476), nor was here any adverse possession to operate as a bar; nor has there been any neglect since the partition. When the defendant Tuxbury asserted a title, after the conveyance by Jonathan, the plaintiff immediately brought his bill.

It has been further argued that the defendants, with the exception of Jonathan, and perhaps George, are *bonâ fide* purchasers for a valuable consideration, without notice, and as such are entitled to hold the land. But we are of opinion that the consideration is not sufficient to entitle them to stand upon that ground. The payment of the debts of the grantor might be good, standing alone, if not grossly inadequate, but the agreement to support him and his wife forms a part of the consideration, and for aught which appears the material part of it. Such a consideration is not within the principle which protects a *bonâ fide* purchaser without notice. It is not good against existing creditors; 11 N. H. Rep. 459, *Smith* v. *Smith;* and, *a fortiori*, it cannot be good against a *cestui que trust*, where his land is fraudulently conveyed by the trustee. A purchaser upon such a consideration must look to the title, and the equities to which it is subject.

It is said in *Twyne's Case*, 3 Co. 81, that " Where a man, being greatly indebted to sundry persons, makes a gift to his son, or any of his blood, without consideration, but only of nature, the law intends a trust betwixt them, *scil.* that the donee would, in consideration of such gift

being freely and voluntarily made to him, and also in consideration of nature, relieve his father, or cousin, and not see him want who had made such gifts to him." There is surely not the less a trust, if the consideration be an express agreement that such relief should be furnished, and a party who owns the land is as well entitled to the benefit of the principle as a creditor.

The plaintiff has desired leave to amend, if the court should be of opinion that Sally Jewell ought to be made a party; but this seems not to be a proper stage for amendment, if the matter can be reached in any other mode. No amendment is generally allowable, if the parties are at issue upon the points of the original bill, and witnesses have been examined. Story Eq. Pl. 268. An exception has been admitted in the case of the plaintiffs discovering the necessity of new parties, which the plaintiff may add at any time, by leave of the court, limiting his amendment to that purpose. Ditto 680. But the plaintiff here may wish to go further than merely to summon in further parties, and it admits of question whether new averments can be introduced by way of amendment, without allowing the answers to be withdrawn, and making it necessary to take the testimony anew.

A supplemental bill is proper to bring before the court a party who has been omitted to be introduced at the stage of the cause in which an amendment for that purpose may be made. Story Eq. Pl. 271; 4 Johns Ch. 605, *Ensworth* v. *Lambert;* Mitf. Eq. Pl. [62] 99, and notes.

We do not at present see any objection to the plaintiffs alleging, in a supplemental bill, whatever it may be necessary to allege respecting the interests of Sally Jewell and Susan Merrill.

*Leave to file a supplemental bill.*